**UNITED STATES of America,
Appellee,**

v.

**Paul Eugene LAPE, Appellant.**

**No. 23815.**

United States Court of Appeals
Ninth Circuit.

June 30, 1969.

Donald C. Duchow (argued), San Francisco, Cal., for appellant.

Jerrold M. Ladar (argued), Harvey Ziff, Asst. U. S. Attys., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and KILKENNY, District Judge *.

HAMLEY, Circuit Judge:

Paul Eugene Lape appeals from his conviction, following a jury trial, of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d) and (e). We affirm.

Lape's first point on appeal is that the trial court erred in denying a motion for mistrial after another witness divulged that Lape was an escapee from the California prison system.

Lape was tried jointly with codefendants Robert Miles Knox and Thomas William Taylor. Lape and Taylor were represented by separate appointed counsel and Knox was represented by retained counsel. On the third day of the ten-day trial, the Government called as a witness Thomas J. Padden, a Special Agent of the Federal Bureau of Investigation. Padden gave a brief account of his investigation of the robbery and of Knox's arrest. Just before the completion of his direct examination, Padden stated, in answer to Government questioning, that he had shown a picture of Lape to Knox, and the latter said he was not acquainted with Lape by name, or with the man in the photograph.

Duncan C. Webb, counsel for Knox, then cross-examined Padden and, without any prior indication that he was leading up to such an inquiry, asked Padden whether it was not a fact that Lape had escaped from a federal or state penitentiary. Padden replied that Lape had escaped from a state penitentiary but not from a federal penitentiary. Counsel for Knox then inquired: "He was an escapee?" Padden replied: "He was an escapee from the California prison system." [1]

Donald C. Duchow, counsel for Lape, apparently taken by surprise, raised no objection to this line of questioning at that time. Counsel for Knox concluded his cross-examination after one more question. Counsel for Lape then stated that he did not wish to cross-examine Padden at that time, but would perhaps want to do so later. The jury was then excused so that counsel for Knox could have a hearing, out of the presence of the jury, concerning the admissibility of certain Government exhibits taken from Knox's home.

As soon as the jury retired, counsel for Lape asserted that co-counsel's questioning of Padden, bringing out that Lape was an escapee, constituted prejudicial misconduct. At first he stated that he did not know what he could do about it because he did not want to move for a mistrial. However, after further colloquy, Lape's counsel made such a motion. The trial court then severely critized Knox's counsel for eliciting the testimony concerning Lape's escape without first bringing the matter to the attention of the court outside the presence of the jury. Counsel apologized to the court.

Counsel for the Government then suggested that instead of granting a mistrial, the court should strike from the record the statement regarding Lape's escape from the penitentiary and admonish the jury to disregard it. The following colloquy then occurred:

"MR. DUCHOW: Your Honor, I will concur with Mr. Ladar's suggestion. As I say, I don't really want to move for a mistrial. On the other hand, I don't know what to do. THE COURT: You did a few minutes ago. Are you withdrawing your motion? MR. DUCHOW: No, Your Honor, I guess I better not. Just strike my previous statement."

---

* The Honorable John F. Kilkenny, United States District Judge for the District of Oregon, sitting by designation.

1. Counsel for Knox later stated that his purpose in revealing, through his cross-examination of Padden, that Lape was an escapee was to explain why Knox had told Padden he did not know Lape.

The trial court then took the motion for mistrial under submission. The jury were called back and dismissed for the day without anything being said to them about the testimony that Lape was an escapee. When the trial resumed the next morning, and in the absence of the jury, there was further argument on the motion for mistrial, after which the motion was denied. The court then asked all counsel to suggest what kind of admonition to the jury would be appropriate. Counsel for Lape, indicating how difficult it is to "unring a bell," suggested that the jury just be told to disregard the statement. The jury was recalled and they were given the admonition quoted in the margin.[2]

The questioning of the F.B.I. agent by counsel for Knox, which revealed that Lape was an escapee from the California penal system, might well be considered so prejudicial under some circumstances that the only effective remedy would be to declare a mistrial. Here, however, the incident occurred on the third day of a ten-day trial. In calendar days the time span was even longer. The improper cross-examination occurred on September 18, 1968, and the case did not go to the jury until October 2, 1968. Therefore the matter was not fresh in the minds of the jury when they retired to reach a verdict.

The proof of Lape's guilt was overwhelming. According to the Government's evidence, Lape, using the fictitious name of Conners, had flown from Homer, Alaska to San Francisco a few days prior to the robbery and had returned to Homer shortly thereafter. He was arrested in his Homer, Alaska residence and several two-dollar bills were found and identified by serial number as

having been taken in the robbery. He escaped from the United States Marshal and was recaptured a short time later. Lape's fingerprints were found on the map used by the robbers to plan the route for the kidnapping which accompanied the robbery. He was shown to have associated with Knox and Taylor under the name of Conners.

 Even where error of constitutional proportions occurs at a trial, if there is overwhelming untainted evidence to support the conviction, it is proper to conclude that the constitutional error was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, decided June 2, 1969. Under the circumstances of this case, the improper divulging of Lape's status as an escapee from the California prison system could hardly be said to have deprived him of due process or any other constitutional right. The fact that Lape's counsel had difficulty making up his mind whether to move for a mistrial indicates that even he then regarded the likelihood of prejudice as problematical.

The trial court followed a wholly appropriate course in dealing with a difficult problem for which the prosecution was in no sense responsible. There is nothing to show that the jury did not conscientiously follow the court's instructions, and reach a verdict on the basis of the admissible evidence.

We hold that the trial court did not abuse its discretion in denying the motion for a mistrial.

Lape also contends that the trial court erred in denying his motion for suppression of evidence seized at Lape's residence. The seized items, later admitted into evidence at the trial, consisted of

2. "I would like to give you an instruction at this time, ladies and gentlemen, concerning certain testimony of Agent Padden who was on the stand at the conclusion of the session before you last.

"I am instructing you to disregard the testimony of the agent, and by testimony I include both the questions and the answers, that relate to the status of the

defendant Lape at the time of the arrest of defendant Knox. The last two questions and answers related to that subject matter. You are instructed to disregard such testimony and to put it out of your mind and treat it as though you had not heard it. It is not relevant or material to this case."

two two-dollar bills, currency of the United States.

This evidence was seized during the course of a search of Lape's residence at Homer, Alaska, following Lape's arrest on the bank robbery charge. Special Agent James H. Frazier, who made the arrest, testified that he went to Lape's home with three other officers on May 16, 1968, after receiving certain information from the Anchorage, Alaska, F.B.I. office. This information, which the Anchorage office had received from the San Francisco F.B.I. office, was to the effect that Lape, who might be residing in Homer under the name of John Charles Conners, was one of the alleged participants in the robbery. Additional information conveyed to Frazier at the same time and in the same manner was to the effect that Lape had escaped from a California prison on November 20, 1966, and that federal warrants were outstanding against Lape on the bank robbery charge and for unlawful flight to avoid confinement. Frazier did not have either of the warrants in his possession.

When Frazier and the other officers appeared at Lape's front door, he invited them into his home. Lape already knew one of the State Troopers in the party and the others were introduced to him. Lape acknowledged his true name, whereupon he was placed under arrest for bank robbery. A search of the residence was then undertaken during the course of which the currency was found.

Lape points out that subsequent to the arrest, in a proceeding before a district court in San Francisco, the bank robbery arrest warrants issued against Lape's codefendants Taylor and Knox, also naming Lape, were held to be invalid because the application for the warrants contained inadequate factual recitals.

■ Assuming that the warrant for Lape's arrest on the bank robbery charge was invalid for the same reason, the arrest of Lape was nevertheless valid. Frazier was entitled to rely upon the information supplied to him through official F.B.I. channels and he therefore had ample probable cause to arrest Lape for bank robbery. See Travis v. United States, 9 Cir., 362 F.2d 477, 481. This being true, the fact that the warrant for his arrest on that charge may have been invalid is wholly immaterial. See 18 U. S.C. § 3052 (1964); Rocha v. United States, 9 Cir., 387 F.2d 1019, 1022. We therefore need not decide whether Frazier was entitled to proceed upon the basis of a bank robbery arrest warrant which was not determined to be invalid until after the arrest was made. Nor need we decide whether the arrest was in any event valid on the basis of the federal unlawful flight warrant.

■ We accordingly hold that the search and seizure was made incident to a lawful arrest and the district court did not err in denying Lape's motion, made during the trial, to suppress the evidence.

Affirmed.