**UNITED STATES of America**

v.

**Wallace Melvin MITCHELL, Paul John Forrest, Edward John Kerns, William Earl Ziefel,**

**Edward John Kerns, Appellant.**

**No. 18065.**

United States Court of Appeals, Third Circuit.

Argued May 18, 1970.

Decided June 11, 1970.

Rehearing Denied July 24, 1970.

Paul A. Barrett, Scranton, Pa., for appellant.

Harry C. Nagle, Asst. U. S. Atty., Lewisburgh, Pa., S. John Cottone, U. S. Atty., Scranton Pa., for appellee.

Before ALDISERT and ADAMS, Circuit Judges, and HIGGINBOTHAM, District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Appellant, Edward Kerns, and three other men were indicted for the robbery of a federally-insured bank in violation of 18 U.S.C. § 2113(d). The three co-defendants, Wallace Mitchell, Paul Forrest and Earl Ziefel, pleaded guilty. Kerns pleaded not guilty, and was tried by a jury before the Honorable Michael H. Sheridan.

The bank robbery occurred on June 28, 1968. The government's evidence at trial established that Kerns and two of the co-defendants escaped from the state prison in Huntington, Pennsylvania, on June 21, 1968, and that on June 25th, Kerns was seen in a stolen automobile. At trial, an eye-witness identified Kerns and the three co-defendants as the men who, on the morning of the bank robbery, held up a hardware store from which guns and ammunition were taken. Two bank cashiers positively identified Kerns as one of the participants in the armed bank robbery. There was testimony that after the bank robbery Kerns and the co-defendants were in an automobile which was pursued by a police

cruiser and that a gun battle ensued. Kerns admitted he was in the car, but denied he fired any shots. Kerns was also identified with his co-defendants as one of the men who, after the gun battle, held hostages at a private home that was surrounded by police. At the conclusion of a three-day trial, on November 27, 1968, the jury returned a verdict of guilty against Kerns who was thereafter sentenced to a term in prison.

In this appeal Kerns alleges several trial errors which he contends constitute grounds for reversal of the conviction: (1) prejudicial remarks and improper cross examination of Kerns by the prosecution, (2) the refusal of the trial judge to grant his request to sequester the witnesses, and (3) the presence of the co-defendants in the courtroom during trial. In a *pro se* brief, Kerns also alleges ineffective assistance of counsel.[1]

Kerns was the sole witness for the defense. During cross examination, after Kerns was questioned about the chase by the police car and the gun battle surrounding it, the prosecution sought to impeach the credibility of Kerns by use of his prior convictions. The following colloquy resulted after Kerns denied firing at the pursuers:

"Q. You are not a man unfamiliar with firearms, are you, Mr. Kerns?

A. No, I am not.

Q. You are not a man unfamiliar with firing at other human beings, are you—are you?

A. I haven't fired at anybody.

Q. You have been convicted of it, haven't you?

A. That is true, sir.

Q. Assault with intent to kill?

A. That is right.

Q. Several counts?

A. That is right.

Q. So you are not unfamiliar with firing at other human beings, are you, Mr. Kerns?

A. Since you bring up that case, sir, probably you would like to go a little further and find out some of the testimony of that case.

Q. You were convicted, weren't you, in open court?

A. I was convicted in—

Q. In a trial by jury?

A. I have papers in the court now—

Q. You were sentenced, weren't you?

A. —five of the witnesses were perjurors—two federal agents, a captain of homicide, a lieutenant of detectives of the Pittsburgh squad and a—

Q. How do you explain the people lying on the ground after that little fiasco, Mr. Kerns? Nobody perjured themselves about men being shot with bullets, or stabbed, or employees of a bank whipped.

A. There was no whipping in all of this. The thing is that you don't understand that because a policeman was involved in that bank robbery—

Q. A policeman?

A. A policeman was involved in that bank robbery.

Q. How many policeman were hit?

A. There were two officers that were shot, sir, I brought a car—"

At that point, although there was no objection by defense counsel, the trial judge interrupted the examination and cautioned the prosecution that it should limit cross examination to the name of the crime, the time and place of conviction, and the punishment for it and that the prosecution should avoid eliciting any details of the crime. When he resumed cross examination, the prosecutor established that Kerns had three prior convictions for robbery and robbery with a dangerous weapon.

---

1. Kerns filed a *pro se* brief in this Court. Counsel was appointed to represent him, and was later replaced by another attorney who filed an additional brief and argued the case. The brief filed by counsel did not contain the contention regarding the ineffective assistance of counsel.

Appellant contends that the prosecution's remark about "men being shot with bullets, or stabbed, or employees of a bank whipped", and his earlier question, "You are not a man unfamiliar with firearms, are you, Mr. Kerns?" were made solely to prejudice Kerns. He argues that they deprived him of his right to a trial by an impartial jury and thus constitute plain error under Rule 52 of the Federal Rules of Criminal Procedure, requiring reversal of the conviction.

 Although it is clear that the prosecution may impeach a witness, including the defendant, with prior convictions for felonies,[2] it is improper for the prosecution to go into the details of a crime when seeking to impeach a witness with prior criminal convictions. The prosecution is limited to establishing the number of convictions, the nature of the crimes, and the time and date of each, and may not elicit information solely to prejudice the defendant. *See e. g.* Tucker v. United States, 409 F.2d 1291, 1294 n.1 (5th Cir. 1969); Beaudine v. United States, 368 F.2d 417, 421 (5th Cir. 1966); United States v. Tomaiolo, 249 F.2d 683, 687 (2d Cir. 1957); C. McCormick, Evidence § 43, at 92–93 (1954). Courts are aware of the prejudicial nature of all evidence of prior convictions, and where the prosecution goes beyond the essential facts of the convictions a reversal may be required, although counsel does not object. *See* United States v. Pennix, 313 F.2d 524 (4th Cir. 1963).[3]

 We recognize the seriousness of the prosecutions questioning, and realize that such a line of questions may be reversible error in certain contexts. This result, however, is not indicated here.

Counsel who was present during the proceedings and best able to judge the impact of the remarks did not object, or ask for the withdrawal of a juror, or request that the judge give immediate cautionary instructions to the jury.

In his charge, Judge Sheridan specifically directed the jury to use the evidence of prior convictions for impeachment only, and for this purpose to consider the name, time and place of the crimes and punishments imposed, and to disregard the details. Although we are aware that the type of instructions submitted by Judge Sheridan may not always cure the prejudice to the defendant, just as they may not insure that prior convictions are used solely for impeachment, they are proper and may cure such errors. *See e.g.* United States v. Perea, 413 F.2d 65, 68 (10th Cir. 1969). In any event, the defendant did not submit any request for charge on this point and did not take any exception to the charge.

It is also particularly significant that Kerns himself opened the door to the prosecution's comment when he said "probably you would like to go a little further and find out some of the testimony," and then added that the witnesses at his previous trial "were perjurors". The prosecutor may have concluded that if he did not pursue or probe this allegation the jury would believe Kerns, unless they were aware of other facts.[4]

Finally, we must consider the possible prejudice to Kerns in the context of the

---

2. *See e. g.*, United States v. Evans, 398 F.2d 159 (3d Cir. 1968); United States v. Lowe, 234 F.2d 919, 922 (3d Cir. 1956) cert. denied, 352 U.S. 838, 77 S.Ct. 59, 1 L.Ed.2d 56.

3. In *Pennix,* the error consisted of questions on cross examination concerning thirty prior *arrests* of the defendant. The Court held it was reversible error because the primary issue in the case was a conflict between the testimony of the defendant and two *confessed* bank robbers. *But cf.* Martin v. United States, 404 F.2d 640,

643 (10th Cir. 1969); Nutt v. United States, 335 F.2d 817 (10th Cir. 1964), cert. denied 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180.

4. *Compare* United States v. Nettl, 121 F.2d 927 (3d Cir. 1941), cited by the appellant, in which this Court found reversible error when the defendant denied he was convicted of certain crimes and the prosecution refused to accept the answer and asked about a crime for which the defendant was not convicted.

entire case against him. The prosecution's case was extremely strong and we conclude as did the Supreme Court in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), that under these circumstances the comments fall within the doctrine of harmless error. Several witnesses testified that Kerns and his three co-defendants were together before the crime; two eye-witnesses identified him as one of the bank robbers; another witness identified him as one of the participants in the hardware store robbery the morning of the bank holdup; and Kerns admitted that the next day after the holdup he was in a car together with the co-defendants, fleeing from the police, and that there was shooting from the car. He was also identified with the co-defendants as holding hostages after the crime. The jury was properly aware of the fact that Kerns had escaped from prison and was convicted of several other crimes. In view of the eye-witness identification, the evidence in this case, unlike that in Chapman v. California, 386 U.S. 18, 25, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), was more than a "circumstantial web of evidence", and possible prejudice from the prosecutor's comments was "beyond a reasonable doubt" harmless error.[5] 386 U.S. at 26, 87 S.Ct. at 829.

■ Kerns contends that because of the prosecutor's remarks he was denied a fair trial, and that it is improper for an appellate court to conclude that the jurors were not influenced by this prejudicial evidence. In *Harrington*, however, the Supreme Court referred to Chapman v. California, considered the impact of the tainted evidence, which was conceded to be constitutional error, and refused to reverse because of the facts and evidence in the entire case.[6]

■ Kerns also contends that it was reversible error for the trial judge to refuse to sequester the witnesses. The judge, however, specifically gave the defendant an opportunity to renew his motion for sequestration. This was never done. Since there is no particular allegation of harm from the failure to sequester witnesses and the witnesses were positive in their identification, this is not plain error under Rule 52(b).[7]

Appellant's position that he was prejudiced because the co-defendants were in the courtroom during trial is not tenable. The remark about their presence was made at side bar and there is no indication that the attention of the jury was focused on these persons.

Finally, Kerns' theory of ineffective assistance of counsel is not supportable on the basis of counsel's failure to object to the prosecutor's comments or to renew his request for sequestration of witnesses, because as we have indicated the

5. *Compare* Salerno v. United States, 61 F.2d 419, 424–425 (8th Cir. 1932), in which similar questioning regarding the defendant's familiarity with guns was held improper, but not reversible error "in view of the abundance of competent evidence". In United States v. Tomaiolo, 249 F.2d 683 (2d Cir. 1957), relied on by appellant, reversal was required because of an aggregate of errors.

6. The harmless error rule of *Harrington* was applied to prejudicial remarks of the prosecution in United States v. Hoffman, 415 F.2d 14, 21 (7th Cir. 1969), cert. denied, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423, and to the improper disclosure that the defendant was an escapee from prison in United States v. Lape, 413 F.2d 816 (9th Cir. 1969). *See also* Comment, Harmless Constitutional Er-

ror: A Reappraisal, 83 Harv.L.Rev. 814 (1970). We have applied the more stringent test of harmless error as set forth in *Chapman* and *Harrington*, although the prosecution urges us to apply Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). We do not, however, conclude that questions regarding the admissibility of impeachment evidence are of constitutional proportions. *See* United States v. Evans, 398 F.2d 159, 164 (3d Cir. 1968) and Fed.R.Crim.P. 26.

7. *See* Commonwealth v. Turner, 371 Pa. 417, 427, 88 A.2d 915 (1962), where the Supreme Court of Pennsylvania held that it was error for the trial judge to refuse a request for the sequestration of witnesses where the crucial question was the identification of Turner.

rights of Kerns were not thereby prejudiced.

Accordingly, the judgment of the District Court will be affirmed.