**UNITED STATES of America**

v.

**William CLOSSON.**

**Crim. No. 73–658.**

United States District Court,
E. D. Pennsylvania.

Oct. 11, 1974.

4. Apparently, the applicability of § 402A has not been widely studied or accepted by the bar.

Joseph M. Fioravanti, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Thomas C. Carroll, Defender Ass'n of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the defendant's motion for a new trial, or, in the alternative, for a judgment of acquittal after a jury verdict of guilty on all three counts charged in the indictment. The three counts upon which the defendant was found guilty were as follows:

Count I   Possession with intent to distribute a schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1);

Count II   distributing and causing to be distributed a schedule II con-

trolled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Count III conspiring to distribute a schedule II controlled substance in violation of 21 U.S.C. § 846.

The defendant's original motion raised seven issues for the Court to decide, but in his brief he has narrowed the issues to five:

1. did the trial judge err in failing to grant a mistrial when the United States Attorney made a statement to a potential witness at a hearing outside the presence of the jury regarding the possibility that such witness may be committing perjury if he testified contrary to a statement which he made under oath?

2. did the trial judge err in permitting the government to cross-examine the defendant regarding a prior conviction?

3. did the trial judge err in permitting the government in its cross-examination to inquire of the defendant whether he had been convicted of a crime for which he received a sentence of probation?

4. did the trial judge err in failing to charge the jury that the felony for which the defendant had been previously convicted is now a misdemeanor?

5. did the trial judge err in failing to sustain defense counsel's objection concerning the United States Attorney's closing address wherein he imputed personal knowledge to defense counsel of the reason for the delay in indicting the defendant?

1. *Did the trial judge err in failing to grant a mistrial after the United States Attorney made a statement to a potential witness at a hearing outside the presence of the jury regarding the possibility that such witness may be committing perjury if he testified contrary to a statement which he made under oath?*

No. After the first two government witnesses had testified, the United States Attorney informed the Court that he wished to call to the stand the government's informant in this case. The United States Attorney stated to the Court that the informant who was then imprisoned in a state institution might be a recalcitrant witness and that there was a possibility that he might wish to invoke his Fifth Amendment privilege against self-incrimination. The informant was then brought into the courtroom and a hearing was held outside the presence of the jury. The purpose of the hearing was to determine whether or not the informant intended to assert the Fifth Amendment privilege against self-incrimination and if so, to determine whether there was a reasonable cause to apprehend danger from any direct answers he might give thereby justifying his invocation of the testimonial privilege. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

During the questioning of the informant, he stated that he knew nothing about the case, that he did not want to testify, that he desired to invoke his Fifth Amendment privilege and that he wanted a lawyer to advise him. The United States Attorney informed the Court that under the circumstance the informant would not be called by the government to testify. At this point, the informant agreed to talk to defense counsel if defense counsel desired to speak to him at which time the United States Attorney made the following statement:

> Your Honor, I will insist that since he [Mr. Carroll, Defense Counsel] is talking to Mr. Smith [informant] as a potential witness, not as a client, that I be present. I would ask that I be present. I would ask that I be present in that discussion.

> I suspect that there is a possibility that if this witness is called to testify —and I don't know this for sure, but according to the statement he has made here before Your Honor, that he knows nothing about this, that he may be perjuring himself if he is called.

I want to know if that is the case. I want to be prepared to confront this man with that possibility and I would also like this witness to know that he subjects himself to another five years' imprisonment and a $10,000 fine if that be proven.

Defense counsel after the United States Attorney's remarks asked for a mistrial which the Court denied. The informant then stated: "If I can help the defender, Your Honor, I will be glad to," after which the Court gave defense counsel the opportunity to talk to the informant. The Court stated that if defense counsel, after meeting with informant, wished to call him as a witness for the defense, it would be necessary to continue the hearing out of the presence of the jury so as to determine whether the informant still intended to invoke his Fifth Amendment privilege, and if so, whether he was entitled to claim the testimonial privilege. After defense counsel conversed with the informant, he stated to the Court that the defense did not intend to call the informant as a witness. Accordingly, the hearing out of the presence of the jury was terminated and the government closed its case.

■ In light of these facts, the Court did not err in failing to grant the defense motion for a mistrial. The statement of the United States Attorney was made out of the hearing of the jury and with no apparent intent to threaten or intimidate the informant. The United States Attorney stated on the record he did not act to threaten the prosecutive witness but acted simply out of an abundance of caution in light of the fact that he believed the witness might perjure himself. In the recent case of Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L. Ed.2d 1920 (1972), the United States Supreme Court held that the threatening remarks of the trial judge effectively drove a defense witness off the stand and deprived the defendant of due process. In that case, the trial judge gratuitously singled out the sole defense witness for a lengthy admonition on the dangers of perjury. In *Webb*, the trial judge did not stop at warning the witness of his right to refuse to testify and of the necessity of telling the truth but instead implied that he expected the witness to lie. The trial judge then went on to assure the witness that if he lied he would be prosecuted and probably be convicted of perjury, that the sentence for that conviction would be added to his present sentence and that the result would be to impair his chances of parole.

The touchstone of the Supreme Court's decision in *Webb* was that the unnecessarily strong terms used by the judge could well have exerted duress on the witness so as to preclude him from making a free and voluntary choice whether or not to testify. The Court concluded that the trial judge's remarks effectively drove the witness off the stand and, thus, deprived the defendant of due process of law.

In the instant case, the United States Attorney's statement certainly did not affect the prospective witness' decision whether to testify and did not preclude him from making a free and voluntary choice whether to testify. The record is clear that the Court advised the informant of his Fifth Amendment rights; advised him that no one was trying to "railroad" him; and advised him that his rights would be observed. The record also shows that the Court did not condone the remarks of the United States Attorney and gave the defense an opportunity to talk to the informant so as to enable defense counsel to determine whether or not he desired to call him to the stand. After the United States Attorney's statement, there was no indication that the informant would refuse to testify for the defense, but instead defense counsel reached an independent decision not to call him as a witness. Moreover, the informant, after the United States Attorney's statement, stated that he would be happy to help the defense, if he could. We find nothing in the record to indicate that the defendant was coerced or intimidated by the prosecutor's remarks. This Court can perceive no prejudice resulting to

the defendant. *Cf.* United States v. Reed, 446 F.2d 1226 (8th Cir. 1971); Torralvo v. United States, 481 F.2d 1397 (2nd Cir. 1973) affirming conviction without opinion.

The defendant in his brief states that under the circumstances surrounding the prospective testimony of the informant and the failure of the informant to testify, he was, in the least, entitled to a missing witness instruction to the jury which the Court declined to give. The Court properly declined to give a missing witness instruction on the ground that the informant was equally available and accessible to both the government and the defense, thus, obviating the necessity for a missing witness instruction.

The missing witness instruction is required only if the Court determines that a witness is in fact more accessible to one side than to the other. United States v. Burgess, 440 F.2d 226 (D.C. Cir. 1970); United States v. Pugh, 141 U.S.App.D.C. 68, 436 F.2d 222 (1970); United States v. DeLutro, 435 F.2d 255 (2nd Cir. 1970). The record in this case is clear that the informant was equally available and physically accessible to both the defense and to the prosecution. The Court gave defense counsel an opportunity to talk with the informant for the purpose of determining whether the defense would call him as a witness for the defense. As indicated, the defense opted not to call the informant as a witness. Accordingly, a missing witness instruction would have been inappropriate. See United States v. Grizaffi, 471 F.2d 69 (7th Cir. 1972); Yumich v. Cotter, 452 F.2d 59 (7th Cir. 1971).

2. *Did the trial judge err in permitting the government to cross-examine the defendant regarding a prior conviction?*

No. During cross-examination of the defendant, the United States Attorney, at side bar, informed the Court that he proposed to cross-examine the defendant with respect to a prior conviction for a felony. The matter that the prosecutor made reference to was a marijuana conviction in 1971 in the state court of Pennsylvania. Defense counsel at this point interposed an objection asking the Court to bar cross-examination as to prior conviction for two reasons: (1) its prejudicial value far outweighed its probative value; and (2) when the conviction was entered possession of marijuana under the law of Pennsylvania was a felony, but under the new drug act in Pennsylvania simple possession of marijuana is only a misdemeanor. The Court ruled that it would permit the government to use the prior conviction for the purpose of impeaching the credibility of the defendant and that a cautionary instruction regarding the use of prior conviction evidence would be given to the jury. The prosecuting attorney then asked the following question:

Mr. Closson, will you tell the Court and jury whether it would be accurate to say that on October 14, 1971 there was a judgment of sentence upon you in which you were given three years' probation for felonious possession of narcotic drugs?

The defendant in this post-trial motion now argues that the Court abused its discretion by allowing the conviction to be proved because of its prejudicial effect which was magnified since the prior conviction was for a drug offense.

The rule has long been established in this Circuit that a defendant who takes the stand may be cross-examined concerning a felony for the purpose of impeaching his credibility. United States v. Greely, 471 F.2d 25 (3rd Cir. 1972); United States v. Gray, 468 F.2d 257 (3rd Cir. 1972); United States v. Mitchell, 427 F.2d 644 (3rd Cir. 1970). Moreover, in both *Greely* and *Gray,* the Circuit Court favorably cited Rule 609 of the Proposed Rules of Evidence for United States Courts and Magistrates, which rule as presently revised by the Subcommittee on Criminal Justice of the House Judiciary Committee provides:

(a) General Rule—For the purpose of attacking the credibility of a

witness, evidence that he has been convicted of a crime is admissible if, but only if (1) the crime involved dishonesty or false statement, or (2) the crime was punishable by death or imprisonment in excess of one year *under the law under which he was convicted,* unless the judge determines that the danger of unfair prejudice outweighs the probative value of the evidence of the conviction. (Emphasis added).

In this case the conviction for possession of marijuana was a felony and was punishable by imprisonment in excess of one year at the time the defendant was convicted. Consequently, the cross-examination as to such a conviction was not improper. Moreover, this Court was and is of the opinion that the probative value of the prior conviction substantially outweighed the danger of unfair prejudice especially in light of the defendant's own testimony on redirect examination that the prior conviction was for the possession of only a small quantity of marijuana.

3. *Did the trial judge err in permitting the government in its cross-examination to inquire of the defendant whether he had been convicted of a crime for which he received a sentence of probation?*

No. As stated in United States v. Mitchell, 427 F.2d 644, 647 (3rd Cir. 1970):

> [I]t is improper for the prosecution to go into the details of a crime when seeking to impeach a witness with prior criminal convictions. The prosecution is limited to establishing the number of convictions, the nature of the crimes, and the time and date of each, and may not elicit information solely to prejudice the defendant. *See*

e. g., Tucker v. United States, 409 F. 2d 1291, 1294 n. 1 (5th Cir. 1969); Beaudine v. United States, 368 F.2d 417, 421 (5th Cir. 1966); United States v. Tomaiolo, 249 F.2d 683, 687 (2d Cir. 1957); C. McCormick, Evidence § 43, at 92–93 (1954). Courts are aware of the prejudicial nature of all evidence of prior convictions, *and where the prosecution goes beyond the essential facts of the convictions a reversal may be required,* although counsel does not object. See United States v. Pennix, 313 F.2d 524 (4th Cir. 1963). (Emphasis added)

In this case the United States Attorney in his question to the defendant included the fact that the defendant had received a sentence of three years probation. Immediately after the question was answered in the affirmative by the defendant, his counsel objected to bringing the fact of probation into the case. The Court immediately ordered stricken the portion of the question mentioning probation and ordered the jury to disregard it. In addition, the Court then and there instructed the jury as follows (N. T. 178):

> That the admission of evidence of a prior conviction for a felony is for the sole purpose of impeaching the credibility of a witness, in this case, the defendant, and it is not admitted to show a propensity to commit the crime with which the defendant is charged in this case or for any other purpose whatsoever; and you are to consider it solely on the basis of impeaching credibility.

▆▆▆ This Court is acutely aware of the seriousness of prosecutor's questions regarding a defendant's prior convictions and realizes that a line of questioning which goes beyond the essential facts of the conviction may be reversible error. We are confident that such a result is not here mandated.[1] This Court

---

1. In *Mitchell* the trial court interrupted the prosecutor's cross-examination of the defendant regarding his prior convictions and cautioned the prosecution that it should limit cross-examination to the name of the crime, the time and place of conviction and the *punishment for it* and should avoid eliciting any details of the crime. Also, the trial

finds that the reference to probation was not prejudicial particularly in view of the Court's immediate order to strike and disregard it; if there was error, it was indeed harmless error only. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Leftwich, 461 F.2d 586 (3rd Cir. 1972).

4. *Did the trial judge err in failing to charge the jury that the felony for which the defendant had been previously convicted is now a misdemeanor?*

No. At the close of the evidentiary portion of the case the government and the defense submitted written requested points for charge. Defendant's point number 2 stated:

It has been proved that the defendant William Closson was convicted of a felony in the state court of Pennsylvania, possession of marihuana in 1971. As I have previously instructed you, the law permits proof of a previous felony conviction to impeach the credibility of a witness. However, I instruct you that subsequent to the conviction of Mr. Closson, the Pennsylvania state legislature decided that mere possession of marihuana should not be a felony, but rather is now a misdemeanor under the law of that state. You may consider the fact that possession of marihuana is now only a misdemeanor under the law of Pennsylvania in determining what weight to give to Mr. Closson's prior conviction.

The Court rejected this language suggested by the defendant and in its charge to the jury reiterated its earlier instruction, quoted above, regarding the use and effect of prior conviction evidence. To have instructed in the language submitted by the defendant could easily have provided the jury with a collateral matter which was not at issue in this case. And as we have heretofore pointed out a prior felony conviction of a defendant may be adduced to impeach his credibility.

5. *Did the trial judge err in failing to sustain defense counsel's objection concerning the United States Attorney's closing address wherein he imputed to defense counsel personal knowledge of the reason for the delay in indicting the defendant?*

No. In his closing argument to the jury, defense counsel raised the question of why the government waited some seven months after the event in question to arrest and bring charges against the defendant. In part, defense counsel argued (N.T. X–23 to X–25):

Be that as it may, I consider that to be highly ironic that the prosecutor would use that kind of possible disparity in testimony to suggest that the defendant is concocting a story when the government waited seven months —seven months—to bring charges against this defendant, and you will recall that I asked that question specifically because it is an old story and I saw it coming when Lund [the government agent] was asked to testify to this. You run into the same testimony in every one of these cases—you make the transaction on such and such a date?

Yes.

And you waited eight or ten months to make the arrest in this case?

Yes. Yes.

Why did you wait eight or ten months to make the arrest?

Well, we have this big undercover investigation going; we didn't want to blow our cover. We wanted to

court in its charge to the jury, directed the jury to use the evidence of prior convictions for impeachment only and for this purpose to consider the name, time and place of crimes and *punishment imposed* and to disregard the details. The Circuit Court did not comment specifically on the question of the disclosure of the punishment imposed on a prior conviction.

make sure we caught everybody who was connected with this.

I suggest to you, members of the jury, that the government hoists itself on its own petard in this particular case on that situation because it has two problems making anybody swallow that's why it waited seven months.

. . . .

Members of the jury, I suggest to you that there is no explanation as to why the government waited seven months to bring charges against my client in this case.

Now it may surprise you, perhaps that there is nothing illegal about that. Perhaps it surprises you that the government, if it wants to prosecute somebody, should proceed promptly against them. It is not the law that the government has to do it immediately.

However, I suggest that the jury can properly take that into account in determining the strength of the defense testimony in this case. It should be hardly surprising to you that seven months after an event takes place a defendant should have great trouble in reconstructing precisely where he was, what time it was, and so forth and so on.

In his rebuttal to the jury, the United States Attorney addressed himself to the defense argument above, stating:

Mr. Carroll talked at length about the delay in prosecution in this case.

Mr. Carroll has been a lawyer for quite a while and he knows very well that in nearly every one of the cases that the government brings which is a drug prosecution, in which the case evidence is established in an undercover capacity and in an undercover manner, that rather than blow the cover of the agents who risk their lives when they go into a situation like this —you heard testimony about the gun falling out of the pocket of Mr. Feldman—their lives are on the line every time they go into an undercover situation.

Mr. Carroll knows full well that there is always a delay in prosecution and he knows well that the reason for the delay is none other than the safety of the people who are involved in an undercover capacity. That was another thing he talked about in final argument and I submit to you that that is not an issue in this case.

At the close of the prosecution's rebuttal argument, defense counsel objected to the prosecutor's reference to defense counsel's knowledge concerning the reason for the government's delayed arrest of the defendant. In his post-trial motion the defendant argues that the American Bar Association's Standards on the Prosecution Function specifically disapproves of a prosecutor going beyond the record in his closing address as to any "knowledge" he has as to facts not proved during trial.

In this case, it is argued that the prosecuting attorney improperly imputed knowledge to defense counsel concerning the reason for the delayed arrest of the defendant. The defendant concludes that such argument by the government had the effect of suggesting that defense counsel was hypocritical in his argument to the jury warranting a new trial.

The American Bar Association Standards relating to the Prosecution Function provide at Section 5.9 as follows:

It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice.

■ There are, no doubt, instances in which an attorney's, especially a prosecutor's, reference in argument to factual matter beyond the scope of the evidence or the range of judicial notice, can involve the risk of serious prejudice with a mistrial as a possible remedy. This Court is of the opinion, however, that

the rebuttal argument made by the United States Attorney in this case was neither prejudicial to the defendant nor did it go beyond the scope of the evidence.

The whole issue of the delayed prosecution of the defendant was brought out by the defense in its cross-examination of Agent Lund and Agent Bannister, the government agents in this matter. The following discourse ensued during the cross-examination of Agent Lund (N.T. 57–58):

Mr. Carroll: Did you have any part to play in the decision as to when charges would be lodged against Mr. Closson?

Mr. Fiorvanti: Objected to, Your Honor, I see no relevance to this.

Mr. Carroll: I submit that it does have relevance, sir, and if I may state to the court what I think is common knowledge—

(and at side bar)

Mr. Carroll: One of the considerations in this case, just as in every delayed-arrest narcotics case, is the passage of time between the criminal incident and the notification of charges.

The government's classic explanation is that if immediate charges are brought they all blow the cover; it would somehow disrupt undercover-police activity.

I would like to put the question to this witness as to why, if he had any part to play in the delay of charges, the charges were delayed in this case, since it would appear that he was out of the area and had nothing further to do with undercover activities.

(concluded at side bar)

Mr. Carroll: When you returned to Pittsburgh, which would have been, let's say, in the latter part of April or thereabouts, 1973, did you again return to Philadelphia or the Eastern District of Pennsylvania in an undercover capacity before, say, November of 1973?

Mr. Lund: No, Sir.

Mr. Carroll: All right. Then again I re-ask the question: Did you have anything to do with the decision making process as to when charges would be lodged against this particular defendant and as to when he would be notified of the charges?

Agent Lund: No, sir. I had nothing to do with that decision.

Mr. Carroll: Who would be the person to ask that question? Who is the case agent on the case?

Agent Lund: I believe the case agent is Agent Bannister.

On re-direct examination of Agent Lund the following ensued (N.T. 94–96):

Mr. Fiorvanti: You were asked yesterday in cross-examination by Mr. Carroll, Agent Lund, about the delay in the bringing of charges and the arresting of the defendant. There was a delay of many months or several months in this case.

Will you explain why that was, if you know?

. . . . . .

Agent Lund: The basic reason why it is usually done in most cases—

Mr. Carroll: Excuse me, sir. Again I am going to object as to what usually happens.

. . . . . .

Mr. Fiorvanti: Do you have any knowledge as to why there was a delay in this matter with respect to the arrest and prosecution of the defendant, William Closson?

Agent Lund: Yes, Sir.

Mr. Fiorvanti: And what is that?

Agent Lund: It was hoped that I might return to Pittsburgh—or to Philadelphia at a later time in hopes of trying to get into some more trafficking circles and make subsequent purchases.

Mr. Fiorvanti: So your concern was that your cover not be exposed; would that be correct to say?

Agent Lund: Yes, sir.

And on cross-examination of Agent Bannister the following ensued (N.T. 120):

Mr. Carroll: When were the charges brought against Mr. Closson? When was he notified of the charges?

Agent Bannister: Offhand, I can't recall the date.

Mr. Carroll: Would it be fair to say that it was sometime in the late fall of 1973?

Agent Bannister: Yes.

Mr. Carroll: Agent Lund testified that the reason, as he understood it, for the long delay was that there was some expectation that perhaps he would come back from Pittsburgh and continue on this investigation.

Agent Bannister: That's correct.

There was certainly evidence in this case, developed initially by the defense, indicating that the reason for the delay between the actual undercover purchase of the narcotics (April 6, 1973) and the indictment of the defendant (November 16, 1973) was that an earlier arrest would hamper further undercover operations.

Although the United States Attorney did refer to Mr. Carroll's awareness of the explanation generally advanced by the government for delaying an arrest in an undercover situation, such a reference in this case does not appear to be beyond the scope of the evidence. Furthermore, defense counsel in contending at side bar that the defendant should be permitted to cross-examine concerning the delay in making the arrest (which the Court permitted) stated that it was "common knowledge" that in every delayed-arrest narcotics case, "the government's classic explanation is that if immediate charges are brought they all blow the cover; it would somehow disrupt undercover-police activity." Hence, the argument that defense counsel had knowledge of the government's explanation for a delayed arrest was certainly not without some basis in fact. The re-

buttal of the United States Attorney was not in any way prejudicial to the defendant. See United States v. Dolasco, 470 F.2d 1297 (3rd Cir. 1972); United States v. Leftwich, *supra*.

Accordingly, the following Order is entered:

## ORDER

And now, to wit, this 11th day of October, 1974, it is hereby ordered that the defendant's Motion for New Trial and/or Judgment of Acquittal is denied.