**UNITED STATES of America**

v.

**Reginald ACKRIDGE et al.**

**Crim. No. 72–691.**

United States District Court,
E. D. Pennsylvania.

Dec. 27, 1973.

Robert E. J. Curran, U. S. Atty., Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert St. L. Goggin, Brian E. Appel, Eugene H. Clarke, Jr., George M. Bobrin, Edward Blumstein, Harry S. Tischler, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Five of the above six defendants [1] were tried before a jury and convicted on an indictment charging all six defendants with the unlawful and willful taking, by force and violence, of $150 in United States Government money from the person of William Gilmore, in violation of 18 U.S.C. § 2112.[2] All five defendants have filed motions for judgment of acquittal pursuant to Fed.R. Crim.P. 29 and, in the alternative, for a new trial pursuant to Fed.R.Crim.P. 33. A detailed examination of the entire

---

1. Due to complications involving defense counsel's unavailability for trial, the trial of Donald Ackridge was severed from that of the other five defendants; trial was scheduled later and after commencement of which he entered a plea of guilty on July 20, 1973.

2. Title 18 U.S.C. § 2112 reads as follows: "Whoever robs another of any kind or description of personal property belonging to the United States, shall be imprisoned not more than fifteen years."

record, including the briefs and memoranda submitted by the Government and defense counsel, has convinced the Court that the various grounds raised by the defendants in support of their respective motions do not constitute a sufficient basis for the granting of the relief requested. Accordingly, the defendants' motions for a new trial and for judgment of acquittal will be denied.

At trial, the Government adduced the following facts: On November 28, 1972, William Gilmore, a Philadelphia Police Officer assigned to the Drug Enforcement Administration ("DEA") task force in Philadelphia was sent into the area of 1738 North Marshall Street, Philadelphia, for the purpose of purchasing heroin from a suspected purveyor of narcotics in that particular area of the city. Officer Gilmore was accompanied in this assignment by one Eugene Alexander, a paid Government informant. Both persons were dressed in plain clothes so as not to disclose the identity of Officer Gilmore. Before leaving DEA headquarters, Officer Gilmore was given $150 official Government advanced funds by Chief Investigator Edward Cassidy. These funds were to be used for the purpose of making a heroin purchase on the 1700 block of North Marshall Street. In addition to Officer Gilmore and the Government informant, six surveillance agents in three teams, comprised of two officers on each team, entered the area and assumed prearranged surveillance positions from which they could observe the intended narcotics purchase.

While Officer Gilmore and the informant were standing in the area of 1738 North Marshall Street, they were accosted by the defendants, two of whom (Donald and Reginald Ackridge) were brandishing handguns. Threats and insults were shouted at the officer and informant by the six defendants. Donald Ackridge struck Eugene Alexander across the face with a gun and stated, "This is a hold-up. Get against the wall." After Officer Gilmore stated to the defendants that he had the money

and not the informant, Demetrius Greenhawe reached in and took the $150 from Gilmore's right coat pocket and handed it to Donald Ackridge. Defendant Greenhawe then frisked Officer Gilmore for additional money and kicked him in the posterior. Throughout the commission of the robbery, shouts of "Shoot them," and "Shoot the lock off the door" (meaning the door of the house located at 1738 North Marshall Street) were hurled by all of the defendants.

Officer Gilmore and the informant were subsequently told that they had five seconds to leave the area or be shot. The officer and informant promptly ran down Marshall Street. Officer Gilmore ran toward Sergeant Barron, a member of the Philadelphia Police Department assigned to DEA and a member of the surveillance team heretofore described. Sergeant Barron was informed of the robbery that had just occurred and he, in turn, notified the remaining members of the surveillance squad via the police radio. The surveillance teams closed in and apprehended the six defendants, all of whom were in the immediate area and attempting to flee from the pursuing officers.

Demetrius Greenhawe and Donald Ackridge were apprehended by Sergeant Barron in front of the house located at 1730 North Marshall Street. Officer Gilmore identified Greenhawe and Ackridge as two of the six people that perpetrated the robbery. Donald Ackridge was searched, and on his person was found $150, later identified as the Government money advanced to Officer Gilmore at DEA headquarters. Sergeant Barron retrieved from the curb a handgun that he observed Donald Ackridge discard as the police officers approached.

The other four defendants were apprehended and brought back to the scene. Officer Gilmore identified each as having taken part in the robbery. Sergeant Bruno, another member of the Philadelphia Police Department assigned to DEA, apprehended Zachary Scott approximately one block from the scene of

the robbery. A search of this defendant uncovered a .22 caliber pistol loaded with eight (8) bullets.

The six defendants were then placed in official Government vehicles and transported to DEA headquarters at 308 Walnut Street in Philadelphia. At the request of the Assistant United States Attorney, Officer Gilmore again positively identified the defendants as the six individuals who accosted and robbed him of $150 in official Government money.

## Discussion

Defendants contend that the trial court erred in admitting testimony of the two out-of-court identifications and in permitting Government witnesses to make identifications of the defendants in the courtroom. The asserted basis of defendants' contention is that the identifications that occurred at the scene of the robbery and at DEA headquarters were so unduly suggestive and inherently unfair as to violate fundamental due process. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

The prompt, on-the-scene identification of the defendants by Officer Gilmore was conducted in accordance with the accepted and lawful practice of returning suspects apprehended immediately after the commission of the crime to the scene of such criminal activity for the purpose of identification by the victim or witnesses. Considerations of reliability inherent in an immediate identification and the possibility of a rapid release of a mistaken suspect justified the actions of the police officers in conducting the identification on North Marshall Street. United States v. Gaines, 450 F.2d 186, 197 (3rd Cir. 1971); United States v. Barnes, 336 F.Supp. 537, 538 (E.D.Pa.1972).

As previously outlined in this opinion, the defendants were apprehended either right at the scene of the robbery or within a block away. Greenhawe and Donald Ackridge were stopped by Sergeant Barron at 1730 North Marshall Street, only two or three houses from the actual robbery. These two defendants were identified immediately by the victim of the robbery, Officer Gilmore. The remaining four defendants were apprehended and returned to the scene to be identified individually by Officer Gilmore. All six were positively identified as the perpetrators of the crime. The prompt, immediate identification of the defendants was neither unduly suggestive nor conducive to irreparable mistaken identification so as to be violative of the standards set forth in Stovall v. Denno, *supra*.

Similarly, the Court is convinced that the show-up which took place upon the arrival of the defendants at DEA headquarters was both necessary and constitutionally valid. See, Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (1972). This identification was made a short time after the incident by Officer Gilmore and the informant, Eugene Alexander, at the request of the Assistant United States Attorney. The purpose of the second identification was to insure that the right persons had been apprehended. Further, the second identification was necessitated to a significant degree by the defendants themselves, who kept insisting that they were simply walking down the street at the time of their arrest and completely innocent of any wrongdoing.

Having concluded that the identifications that occurred at the scene and at DEA headquarters were in accordance with existing law, the trial court did not err in admitting the testimony of the two out-of-court identifications and in permitting Government witnesses to identify the defendants in the courtroom.

Defendant Jimmy Dixon argues that the Court erred in permitting the Government to introduce evidence of a prior criminal conviction for the purpose of impeaching his testimony. Dixon took

the witness stand on his own behalf and asserted his innocence of the crime. In response to the ruling of the trial court, the defendant Dixon testified on direct examination about a 1967 conviction for larceny, apparently in an effort to minimize its prejudicial impact on the jury. Defendant now contends that the trial court's decision to allow testimony concerning the prior conviction forced him to disclose the larceny conviction and that he should not have been compelled to make such an election.

 It is well-settled law in this Circuit that a conviction of a crime which is a felony or a misdemeanor involving crimen falsi may be used to impeach a defendant. United States v. Gray, 468 F.2d 257, 262 (3rd Cir. 1972); United States v. Mitchell, 427 F.2d 644, 646 (3rd Cir. 1970). The crime of larceny is a felony involving moral turpitude and, as such, is relevant to the question of defendant's honesty and truth-telling capacity. When a defendant is on trial for robbery and takes the witness stand to assert his innocence, the jury is entitled to be apprised of a defendant's prior dishonest conduct. The trial court properly exercised its discretion in permitting the Government to introduce Dixon's prior conviction.

 All of the defendants contend that there was insufficient evidence adduced at trial to sustain a conviction of the offense charged. The Court is fully cognizant of the firmly established legal precept that evidence of mere presence at the scene of a crime is insufficient to prove guilty participation. Hendrix v. United States, 327 F.2d 971 (5th Cir. 1964); United States v. Minieri, 303 F.2d 550 (2nd Cir. 1962). However, the evidence introduced by the Government at trial established more than mere presence of the defendants at the scene of

the crime. The evidence revealed that Reginald Ackridge and Donald Ackridge produced guns as they accosted Officer Gilmore and the informant, Eugene Alexander. Officer Gilmore testified that Donald Ackridge struck Alexander in the face with a gun and that Demetrius Greenhawe reached in his pocket (Gilmore's), pulled out the $150 in official Government money and then kicked him in the back. The victims of the armed robbery testified that they were surrounded by the six individuals; all of the defendants were hurling insults and threats; and, by virtue of the number of the group, the two were unable to defend themselves or escape the intimidating actions of the defendants. All of the defendants were apprehended while in flight from the scene of the crime. While evidence of flight is not in and of itself sufficient to constitute guilt, the fact of flight, when viewed in conjunction with the evidence of intimidation and verbal abuse, establishes the guilt of each defendant. When Officer Bruno finally caught up to and apprehended Zachary Scott, the afore-described .22 caliber pistol was found on his person.

 The Government introduced evidence from which the jury could find beyond a reasonable doubt that the defendants willingly associated themselves with this criminal enterprise and participated in it as something that they all wished and intended to bring about. United States v. Barber, 429 F.2d 1394 (3rd Cir. 1970). The jury so found.

Defendant Demetrius Greenhawe has petitioned the Court to grant a new trial on the basis of evidence discovered after the completion of the trial. During the trial of the matter in question, Eugene Alexander testified that he had not used heroin since May 20, 1973.[3] On or about July 25, 1973, Mr. Alexander testi-

3. Following a one-week suppression hearing, the trial began on June 11 and ended on June 15, 1973. Mr. Alexander testified on direct examination on or about June 12, 1973.

fied in a criminal trial before the Honorable Clifford Scott Green, United States District Judge. At that proceeding, Mr. Alexander testified that in June of 1973 he entered Einstein Hospital, Southern Division, for drug treatment and that he had used narcotics three weeks prior to his admission into Einstein Hospital. Defendant Greenhawe now argues that the fact of Alexander's heroin addiction should be presented to be considered in weighing the credibility of the witness.

The general rule is that newly discovered evidence merely impeaching the credibility of a Government witness is insufficient to justify a new trial. United States v. Kozak, 438 F.2d 1062, 1067 (3rd Cir. 1971); United States v. Odom, 348 F.Supp. 889, 893 (M.D.Pa.1972). Evidence that the informant Alexander had in fact used narcotics after May 20, 1973, would be introduced by the defense · solely to impeach the credibility of the witness. In this case, Alexander was subjected to vigorous and exhaustive cross-examination in connection with his drug problems and prior criminal record. The jury was fully aware of the witness' addiction and propensity toward criminal conduct.

Furthermore, a new trial should be granted when the trial judge determines that the "newly discovered evidence would probably lead to an acquittal on retrial." United States v. Cousins, 429 F.2d 1271, 1272 (9th Cir. 1970); United States v. Odom, *supra*, at p. 893. Although Alexander was a victim of the armed robbery and identified the defendants at trial, the Court does not believe that the introduction of the newly discovered evidence would lead to an acquittal on retrial.

Accordingly, the motions for a new trial and judgment of acquittal must be denied.