**UNITED STATES of America**

v.

**Ellis William MATTHEWS, Jr.**

**Crim. No. 76-58.**

United States District Court,
E. D. Pennsylvania.

Dec. 1, 1976.

---

William J. Winning, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert G. Hanna, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Ellis William Matthews, Jr. and Jerome Artis were tried before a jury and found guilty on April 7, 1976 of all four counts of the indictment charging them in Counts I, II and III with bank robbery and larceny and in Count IV with conspiracy to commit bank robbery. Both defendants filed post-trial motions, which were denied by this Court. 417 F.Supp. 813 (E.D.Pa.1976). Defendant Matthews has now filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure[1] based on evidence which he alleges is newly discovered. For the reasons we will discuss in this opinion, we deny the motion.

In Matthews' motion for a new trial he alleges that on August 16, 1976 his counsel received an unsolicited signed and notarized letter from Jonathan Perry, a co-defendant. Perry, who pleaded guilty to two counts of the bank robbery charge in the indictment, had not been sentenced at the time of trial. In his letter Perry states that although he had intended to testify at Matthews' trial as a witness for the defense, "some things were told to me by my attorney that sort of caused me to change my intentions for selfish reasons." Perry states that Matthews did not participate in the bank robbery. He identifies another person as the one who accompanied him, states that Matthews was mistakenly charged with the crime, and claims that the person who did participate with him in the robbery was let go by the police.

The defendant alleges that Perry's letter is newly discovered evidence which requires the grant of a new trial pursuant to Federal Rule of Criminal Procedure 33. In order to grant a Rule 33 motion, which is directed to the trial court's discretion, our Third Circuit Court of Appeals in *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir. 1976), reaffirmed the following five requisites: (1) the evidence must be, in fact, newly discovered, i. e., discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) the evidence must be material to the issues involved; and (5) the evidence must be of such a nature that at a new trial it would probably produce an acquittal. *United States v. Howell,* 240 F.2d 149, 159 (3d Cir. 1956). *Accord, United States v. Meyers,* 484 F.2d 113 (3d Cir. 1973); *United States v. Bertone,* 249 F.2d 156, 160 (3d Cir.

1. Rule 33 reads in pertinent part:

   The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.

1957); *United States v. Nigro,* 253 F.2d 587 (3d Cir. 1958).

With respect to the first requirement, it is clear that the allegations contained in Perry's letter do not constitute newly discovered evidence. In the defendant's Petition for Writ of Habeas Corpus Ad Testificandum and Memorandum filed on April 2, 1976, the defendant stated that Perry was an "alleged co-conspirator and eyewitness whose testimony is crucial to the defense of this matter" and that "Perry will testify that Matthews was not a participant in the alleged robbery." At trial, the defendant called Perry to testify that Matthews had not participated in the bank robbery. Perry, however, took the Fifth Amendment and did not testify.[2]

██ Since Perry's exculpatory testimony was actually known to the defendant at the time of trial, it cannot be considered evidence that was newly discovered. *United States v. Iannelli,* 528 F.2d at 1293; *United States v. Bujese,* 371 F.2d 120 (3d Cir. 1967). *See also United States v. Granger,* 504 F.2d 585 (9th Cir. 1974). In *United States v. Jacobs,* 475 F.2d 270, 286, n. 33 (2d Cir. 1973), the Court said:

> But we fully agree with the judge's alternative ground, that a court must exercise great caution in considering evidence to be "newly discovered" when it existed all along and was unavailable

only because a co-defendant, since convicted, had availed himself of his privilege not to testify. This is so even if, as alleged, counsel for the co-defendant making a post-trial affidavit exculpating the movant had not allowed the affiant to be interviewed prior to trial.

In *Coplin v. United States,* 88 F.2d 652 (9th Cir. 1937), the defendants supported their motion for a new trial with affidavits of co-defendants who had been acquitted. The Court rejected their contention that the affidavits constituted newly discovered evidence stating:

> We confess that we are not impressed with this eleventh-hour showing on behalf of Konwiser. The attempt is made to explain these affidavits as having been made necessary by the fact that "these witnesses could not have testified unless they took the stand in their own defense," which they elected not to do. They were, of course, quite within their rights in making that election. Their privilege to remain silent during the trial, however, was a shield and not a sword; the defendants can hardly use such silence as a basis for overturning the verdict of the jury.
>
> We are not here dealing with newly discovered evidence. The affiants knew the alleged facts at the time the trial commenced. They chose to stay off the

---

2. Perry's assertion of the Fifth Amendment was thoroughly dealt with in our previous opinion, for in his post-trial motion the defendant claimed that the Court improperly intimidated Perry into taking the Fifth Amendment. The defendant also alleged that the Court violated his due process rights by suggesting that the plea bargain would not be accepted and by implying that the witness, Perry, would receive additional time for taking the stand. In rejecting this argument, 417 F.Supp. at 819, we stated as follows:

> Upon being informed that Perry would testify for the defense, the Court at sidebar directed that Perry's attorney be contacted. (N.T. 4–59—4–62). When Perry took the stand outside the presence of the jury, the Court asked him if he had consulted with his attorney concerning his rights under the Fifth Amendment and whether he understood those rights and he said yes. (N.T. 4–68, 4–69). Thereafter, Perry stated that he was

taking the Fifth Amendment and the Court made a finding that the witness had a valid Fifth Amendment privilege and could not be compelled to testify. (N.T. 4–69, 4–70). The Court neither intimidated nor coerced the witness in any way but properly held that in light of the fact that two counts of the indictment against Perry were still outstanding, and the witness' plea bargain with the Government had not been formally accepted by the Court, Perry could invoke his privilege against self incrimination. (N.T. 4–71—4–72). *See Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *United States v. Mahady & Mahady,* 512 F.2d 521 (3d Cir. 1975).

Furthermore, in that opinion we pointed out that at the time Perry took the stand in open Court, Perry's attorney was instructed by the Court to consult with his client to insure that Perry was aware that the plea bargain could not be revoked.

stand, and to take the chances of an acquittal without having to testify. After the verdict was returned, they suddenly became active on behalf of one of the convicted defendants. Such procedure is not calculated to move an appellate court to set aside an order denying a motion for a new trial. It is elementary that such a motion is a matter addressed to the sound discretion of the lower court. 88 F.2d at 665.

The third requirement set forth by our Third Circuit in *Iannelli* is that the newly discovered evidence must not be merely cumulative or impeaching. At trial, Officer Norman of the Lower Merion Township Police Department testified that on January 21, 1976, in response to a police broadcast of a robbery at the Bryn Mawr Trust Company, he went to his patrol vehicle parked behind the police station, which was approximately ¾ of a mile from the Bryn Mawr Trust Company. (N.T. 2–73—74). Several minutes later he observed a suspicious vehicle which he tried to stop by flashing his lights and tapping his horn. (N.T. 2–76).[3] Instead of stopping, this vehicle made a sudden turn through a red traffic light and proceeded at a high rate of speed in the wrong lane of traffic. (N.T. 2–75—80). Although Officer Norman pursued the vehicle, it was finally brought to a halt by Officer Bowler, also of the Lower Merion Township Police Department. (N.T. 2–77—2–80). Officer Bowler, who was standing in the street, shot out the tires of the suspect's vehicle when the vehicle headed directly toward him. (N.T. 2–77—2–80). Officer Norman arrested and removed from the car a man he identified as the defendant, and observed Officer Vagnozzi of the Lower Merion Township Police Department remove from the defendant's person four parcels of money with Bryn Mawr Trust Company wrappers. (N.T. 2–82—84). The defendant was then placed in the Lower Merion Township police van. (N.T. 2–85, 92, 97). Officers Bowler and Vagnozzi gave similar testimony as to their participation in the defendant's arrest. (N.T. 2–88—94; 2–94—98).

The defendant took the stand in his own defense and testified that he was mistakenly arrested by the Philadelphia police on January 21, 1976 sometime after 12:30 p. m. as he was getting off a bus at 54th and City Line Avenue. (N.T. 4–82). He testified that he was placed in a Philadelphia Police van containing four people, (N.T. 4–91) one of whom the defendant said he later discovered to be Charles Francis. (N.T. 4–84). The defendant testified that he was taken to the Lower Merion Township Police Station. (N.T. 4–85). The defendant testified that he did not rob the Bryn Mawr Trust Company, that he was not in the getaway car with the two other defendants, and that he was not arrested by the Lower Merion Township Police. (N.T. 4–102).

Charles Francis, who was called as a defense witness, testified that he was arrested on January 21, 1976 in connection with a bank robbery of the Metropolitan Savings and Loan Association which is located at 54th and City Line Avenue. (N.T. 4–43). He testified that he pleaded guilty to charges in connection with that bank robbery. (N.T. 4–43). He testified that he was placed in a Philadelphia police van, and that several minutes later the defendant was arrested and also placed in the van that contained three or four people. (N.T. 4–43, 44, 46, 52, 53). Francis testified that he was then taken inside the Metropolitan Savings and Loan Association (N.T. 4–44, 4–48) and that he didn't know what happened to the defendant during that time. (N.T. 4–55).

On rebuttal, the government called Officer Reinecker of the Philadelphia Police Department and Detective Metz of the Lower Merion Township Police Department. Officer Reinecker testified that on January 21, 1976, he arrested Charles Francis in connection with the robbery of the Metropolitan Federal Savings & Loan Asso-

---

**3.** Since the constitutionality of the subsequent search and seizure of the car was thoroughly analyzed in our previous opinion, we will not again describe the factual circumstances surrounding it.

ciation at 54th and City Line Avenue. (N.T. 4–111). Officer Reinecker testified that he placed Francis in a Philadelphia Police Department van and transported him to the bank for identification. Officer Reinecker testified that Charles Francis was alone in the van, and that no other suspects were arrested and put in the van. (N.T. 4–112). Detective Metz identified the defendant as the person whom he saw Officers Bowler and Vagnozzi bring into the Lower Merion Township Police Station in a Lower Merion Township Police van on January 21, 1976. (N.T. 4–116—117).

Our brief review of the evidence produced at trial shows clearly that Perry's letter merely corroborates the trial testimony of the defendant. Rather than adducing a different kind of evidence, Perry's letter is cumulative and does not satisfy the third requisite of *Iannelli.*

The fifth requirement for a new trial enunciated by *Iannelli* is the probability that the introduction of the newly discovered evidence would produce an acquittal. See *United States v. Ackridge,* 370 F.Supp. 214, 219 (E.D.Pa.1973), *aff'd* 500 F.2d 1399 (3d Cir. 1974). The jury rejected the mistaken identity theory as testified to by the defendant and Francis. It accepted the testimony of the Lower Merion Township Police officers who arrested the defendant for the bank robbery in Lower Merion, as well as the testimony of the Philadelphia policeman who arrested Francis on the same day for the bank robbery in Philadelphia. The Court has considered the overwhelming weight of the evidence of guilt produced at trial and finds that the newly discovered evidence is not of such nature that at a new trial it would probably produce an acquittal.

For all of the aforementioned reasons, the Court enters the following Order.

### ORDER

AND NOW, to wit, this 1st day of December, 1976, upon consideration of defendant's motion for a new trial on the basis of newly discovered evidence and the opposi-tion thereto, it is hereby ORDERED and DECREED that defendant's motion is DENIED.