UNITED STATES of America

v.

William Dennis RIGGS.

Case No. 77–269–Cr–J–M.

United States District Court,
M. D. Florida,
Jacksonville Division.

June 12, 1980.

Gary L. Betz, U. S. Atty., John J. Daley, Jr., Sp. Asst. U. S. Atty. and Curtis Fallgatter, Asst. U. S. Atty., Jacksonville, Fla., for Government.

Richard L. Brown, Jacksonville, Fla., for defendant.

MELTON, District Judge.

## OPINION

The defendant, William Dennis Riggs, pursuant to Rule 33, filed a Motion for New

Trial on April 3, 1980. Appended to defendant's Motion for New Trial were affidavits from Eugenia Collier, Grant Heath, and Linda Slaughter. The United States responded in a detailed memorandum accompanied by numerous exhibits and affidavits on April 17, 1980. Additional memoranda were submitted by both defense counsel and the United States. The defendant testified and oral arguments were held on April 29, 1980. Since the hearing each party has filed proposed findings of fact and conclusions of law with the Court.

The Court has carefully considered the extensive pleadings filed both in support of and in opposition to the Motion for New Trial, as well as the arguments of counsel and original trial transcript, and after weighing all the evidence, the Court issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. In November, 1978, William D. Riggs was found guilty by a jury of six counts involving the interstate transportation of Sophie Smith for the purpose of prostitution.

2. The conviction of William Riggs was affirmed by the Fifth Circuit in an unpublished opinion dated December 19, 1979. Subsequent to that decision, the defendant petitioned the Supreme Court for a writ of certiorari. That petition is pending at this time.

3. Defendant's Motion for New Trial alleges that newly discovered evidence has been developed which requires a new trial in the interest of justice.

4. The defendant concedes in his reply to the government's memorandum in opposition to the motion for new trial and in his later reply to the response of the government that Mr. Heath's affidavit does not constitute new evidence. Neither does the affidavit of Miss Slaughter constitute newly discovered evidence since it is directed to a time period subsequent to the commission of the offense for which Riggs was convicted and is not relevant to those charges. It

is, therefore, only Mrs. Collier's testimony that constitutes the alleged newly–discovered evidence.

5. The defendant argues that Mr. Heath's testimony is relevant to the motion for new trial because it demonstrates that the defendant used due diligence at the time of trial in trying to present as much as possible of Mrs. Collier's testimony through alternative sources. Mr. Heath, according to his affidavit, would have testified that Mr. Mishowe told him and Mrs. Collier not to tell Riggs about Sophie Smith because Riggs knew nothing about her coming to Florida. At Riggs' trial Heath who was called as a defense witness, invoked the Fifth Amendment privilege against self–incrimination. In Riggs' direct appeal, the Fifth Circuit considered this very evidence and held that Riggs had not been denied his Sixth Amendment right to compulsory process. In any event, the Heath affidavit has little relevance to the due diligence issue but rather seems to have been proffered to bolster Riggs' claim that a new trial would result in a different verdict. However, there is no certainty that were Riggs to be retried, that Heath would actually testify.

Although the Heath testimony is largely irrelevant to this motion, if a new trial was granted, and if he chose to waive his Fifth Amendment rights, as the government argues the value of Heath's testimony would be diluted by Heath's association with the defendant during the operation of the motel, by the fact that the government is in possession of lewd photographs allegedly depicting Heath with certain of the prostitutes taken at the defendant's house of prostitution, and by the fact that Heath failed to appear as a government witness in the original 1974 white slave act case, thereby requiring the government to have him picked up by the FBI.

6. The testimony of the defendant himself, if this case was retried, would be additionally and substantially impaired by his state felony conviction on drug charges occurring subsequent to the instant trial. *United States v. Rocco*, 587 F.2d 144, 148

(3rd Cir. 1978) (the criminal record of a witness, making him impeachable, creates a lesser likelihood that the new evidence would produce an acquittal), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789. In addition, it appears the testimony of Collier would be impeached by the fact that it may have been generated by her fear of the defendant, who she suspected of having stolen and burned her vehicle in December, 1978, prior to her appearance as a government witness in defendant's RICO trial in New Orleans.

7. The defendant testified that between November 10, 1977, the date of his indictment in this case, and his April 1978, racketeering trial in New Orleans, he understood the nature of the charges against him and that the charges involved Sophie Loretta Smith, Barbara Gerber and Eugenia Porcoro Collier.

8. In December, 1977, according to Riggs he went to the R & R Lounge, Jacksonville, Florida, and saw Collier, but did not talk to her about the pending charges in which he knew she may be a witness, nor did he ask his attorney or anyone else to talk with her. Riggs further testified that between April, 1978, and July, 1978, he saw Collier in New Orleans, Louisiana, when she testified at the racketeering trial against him. Riggs did not talk to her, nor did his attorney. Although the defendant contends that restrictions imposed by the trial judge in New Orleans prevented him from contacting Collier, it appears that the restrictions were not as far–reaching as the defendant implies, and that he made no attempt to test their applicability to Collier. Moreover, Riggs did not place her under subpoena for his trial which was set as a matter of record for a time subsequent to the racketeering trial, nor attempt to procure a material witness warrant.

9. Between July, 1978, and September 27, 1978, when Riggs filed a Motion to Continue to permit him to find Collier, Riggs stated that he learned from Grant "Mudcat" Heath that Collier could provide helpful information at his trial in this case. However, even though Riggs, upon learning this information, allegedly attempted to locate Collier, he did not utilize, according to his own testimony, the FBI reports, grand jury and trial testimony transcripts on Collier which had her addresses, which reports Riggs had observed while in New Orleans, even though said reports showed addresses as fresh and current as 1977 and 1978. Had Riggs utilized the dates and addresses in his possession in his alleged search prior to his filing his Motion to Continue on September 27, 1978, or before his trial on November 26, 1978, he would have gone to Collier's trailer at 7581 Old Kings Road, North, Jacksonville, Florida, which is fifty feet from Slaughter's address of 7563 Old Kings Road, North. Using reasonable diligence, if Collier was not at home, an inquiry in the house right next to Collier's trailer and in a position necessarily one must pass to Collier's trailer on normal egress, he would have learned of Mrs. Slaughter and the information as to Collier's whereabouts, which she may have provided. There is no evidence in the record that the aforesaid addresses in the defendant's possession as early as April, 1978, were given to an investigator appointed by the Court to locate Collier.

10. That from the November 10, 1977, filing of charges in this case, at which time the defendant knew that Collier would be a witness in his case, and the receiving of Collier's addresses in the FBI reports on or before April 19, 1978, and up to defendant's trial on November 26, 1978, and apparently thereafter, Riggs testified that neither he nor to his knowledge had his attorney gone to the Collier addresses in his possession, nor in particular, 7581 Old Kings Road, North Jacksonville, Florida.

11. In September or October, 1979, prior to the argument of Riggs' appeal in this case in New Orleans before the Fifth Circuit, Riggs testified that he learned through an unsolicited call from the husband of Collier about Slaughter, who he was told would be able to contact Mrs. Collier. Riggs further testified that he had known Collier's husband since 1973, knew he came regularly to the defendant's house of prostitution

(Terrace Motel) in 1974–1975, knew the Colliers were married in 1975, and subsequently divorced, and yet never contacted Mr. Collier in his alleged efforts to locate Mrs. Collier. Riggs explained that he had not contacted Mr. Collier because Mr. Collier was in prison during the relevant time frame. As a result of the call from Mr. Collier, Riggs gave these numbers to his attorney who called Mrs. Slaughter and thereafter, within approximately three weeks, his attorney contacted Mrs. Collier and learned of the information that appears in Collier's March 29, 1980 affidavit.

12. Despite learning of this information in or about September or October, 1979, the defendant did not file a Motion for New Trial nor is there any evidence that defendant directed his attorney to do so, nor was the appellate court notified of such a contingency.

13. Motion for New Trial was not filed until April 3, 1980, nor was the Collier information which is now alleged to be newly discovered evidence and highly probative, reduced to affidavit until March 29, 1980. The defendant testified that he was present when Mrs. Collier signed this affidavit.

## CONCLUSIONS OF LAW

1. A successful defense motion for new trial based on newly discovered evidence requires that the defendant establish four prerequisites: (1) The evidence is newly discovered *and* was unknown to the defendant at the time of trial; (2) The failure to learn of the evidence was due to no lack of diligence on the part of the defendant; (3) The evidence is material *and* not merely cumulative *or* impeaching; and (4) The evidence would probably produce acquittal. *United States v. Johnson,* 596 F.2d 147, 148 (5th Cir. 1979). It is clear that the defendant must satisfy *each* of the aforementioned elements. *United States v. Hamilton,* 559 F.2d 1370, 1374 (5th Cir. 1977). Such motions are addressed to the sound discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Id.* at 1373. Were these exacting standards not adhered to, there could be no finality to any litigation. New Trial motions based on newly discovered evidence are not favored and are granted with great caution. *Id.*

2. In this case, the defendant has presented newly discovered evidence that was unknown to the defendant at the time of trial. However, for the reasons which follow the Court finds the defendant has failed to establish the 2nd, 3rd, and 4th requirements, as set forth in the preceding paragraph, for the granting of a new trial.

3. The alleged newly discovered evidence offered in support of defendant's Motion for a New Trial is found in paragraphs 3, 4, 6 and 8 of the affidavit submitted by Eugenia Collier which was dated March 29, 1980. The affidavit of Collier states in part:

"   .    .   . .

3. I was present when Barbara Gerber made a telephone call to Loretta Smith. Bill Riggs was not present. Barbara Gerber made the call on a pay telephone which was the only telephone in the Terrace Motel at that time. I was near enough to overhear Barbara Gerber's end of the telephone conversation. Barbara Gerber asked Loretta Smith to come to Florida on vacation to visit her, and it appeared that Loretta Smith said she would come for a visit. Barbara Gerber did not say anything about the prostitution going on at the Terrace Motel, nor anything about Loretta Smith being a prostitute. It was my understanding that Loretta Smith was coming for a visit to see Barbara Gerber.

4. Some time between the telephone call and Loretta Smith's arrival, both Bill Mishowe and Barbara Gerber told me not to tell Bill Riggs about Loretta Smith's coming to the Terrace Motel.

.    .    .    .    .

6. I was present when Bill Riggs saw Loretta Smith for the first time. If Loretta Smith arrived on a Saturday night it was about Monday that Bill Riggs first met Loretta Smith. When Bill Riggs

first saw Loretta Smith at the Terrace Motel, I remember very well how he looked; he looked surprised and shocked.

. . . . .

8. I know of no facts that indicate that Bill Riggs knew that Loretta Smith was coming to Florida before he first met her, nor that he ever had any part in her coming to Florida. I never heard any discussion in Bill Riggs' presence that Loretta Smith was from New Jersey or outside the state of Florida. . . ."

4. At the time of trial, the defendant apparently knew from Heath the portion of Collier's affidavit alleging that Mishowe told Collier not to tell Riggs about Smith's coming to the Terrace Motel. As to that portion of the Collier affidavit, the defendant has failed to establish that the evidence was newly discovered and unknown to the defendant at the time of trial. However, so as to fully consider the defendant's motion, the Court will consider the implications of that portion of the Collier affidavit, along with the other "newly discovered" evidence.

5. The defendant has not adequately established his due diligence in discovering the "newly discovered" evidence.

a. The defendant now concedes, regarding the question of locating Mrs. Collier, that government conduct is "not really an essential issue". Moreover even were the defendant to continue to assert improper governmental conduct, the Court is convinced upon careful review of the record that no improper governmental action or inaction has been shown. In the instant case the alleged government misconduct was failure to disclose that Mrs. Collier could be found through Mrs. Slaughter. Mrs. Slaughter has apparently mistaken a contact by a Deputy Marshal with that of an FBI agent. No FBI agents visited Mrs. Slaughter a few weeks or months before the New Orleans racketeering trial, as asserted in Mrs. Slaughter's affidavit. The routine service of trial subpoenaes by the office of the United States Marshal is in the nature of a ministerial function and is not an investigative function that would make it an arm of the prosecution. The failure of government counsel to know about Mrs. Slaughter was neither intentional nor the result of negligent conduct.

b. The government is not the guarantor of the presence of witnesses at trial. See *United States v. Ortega*, 471 F.2d 1350, 1358, n. 2 (2nd Cir. 1972), *cert. denied* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Prada*, 451 F.2d 1319 (2nd Cir. 1971). Moreover, all information in the possession of the government regarding the location of Mrs. Collier was substantially and equally available to the defendant some eight months prior to the instant trial.

c. Defendant having conceded that had he known about Mrs. Slaughter he would have been able to locate Mrs. Collier, thereby fails to establish his burden of showing diligence in locating Mrs. Collier in that a diligent search for Mrs. Collier would likely have revealed the existence of Mrs. Slaughter.

d. More importantly, defendant fails to establish his diligence in *learning* of the Collier evidence as distinguished from merely *locating* the witness herself. At the time of the instant trial, present defense counsel had represented the defendant in criminal matters for a period in excess of three years. Prior to the defendant's September 27, 1978, Motion for Continuance and the appointment at that time of a defense investigator, over ten months had elapsed since the instant indictment had been returned. During that period of time, it appears that the defendant never attempted to interview Mrs. Collier. This is especially troubling in that she was produced as a government witness in defendant's RICO trial on April 19, 1978, where she testified adversely to the defendant. Furthermore, the defendant himself knew for a time Collier's whereabouts, having visited Collier on December 12 or 13, 1977. According to the subsequent FBI interview of Mrs. Collier, this interview was not with a view towards identifying Mrs. Collier's possible testimony, but rather to

scare her. (See Attachment L of United States' Memorandum in Opposition to Defendant's Motion for New Trial.)

e. Defendant suggests that the relevancy of the Heath affidavit is that it demonstrates his due diligence in producing as much as possible of the Collier testimony through any alternate sources that were available to him. On the contrary, the Court finds that this is additional evidence of lack of diligence on the part of the defendant. Since the defendant knew that the witness Heath had claimed the Fifth Amendment privilege one year prior to his aborted trial testimony, regarding the same subject matter for which the defendant called him to the stand (trial transcript, pages 246A–247), it may have been imprudent of the defendant to rely so heavily on Heath. The defendant can hardly claim diligence in *learning* of the Collier evidence when he apparently already knew a good portion of it and nevertheless failed to seriously attempt to locate Mrs. Collier until ten months after the instant indictment, and never placed her under subpoena nor sought a material witness warrant.

■ 6. The defendant has not established that the newly discovered evidence is material and not merely cumulative or impeaching. Material evidence is evidence which is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case. *Black's Law Dictionary.* The "newly discovered evidence" is contained in paragraphs 3, 6, and 8 of the Collier affidavit. However, as previously stated paragraph 4 of the affidavit, although not "newly discovered evidence" will be considered as such for the sake of this discussion.

a. Paragraph 3 refers to a call made by Gerber to Smith in which Collier does not recall the subject of prostitution being discussed, but only the subject of a vacation. The Collier affidavit fails to identify the date of that call or whether she heard the entire conversation. Absent fixing the date of that call, this evidence is immaterial.

There is nothing to show that this call relates to overt acts one and three of Count One and their corresponding substantive Counts Two and Four, but could easily have been an entirely different conversation. The "understanding" of Collier that Smith was coming for a visit is also immaterial; it is the intent of the defendant which is material. Most importantly, Smith testified that she had "several conversations" with Barbara Gerber prior to Smith coming down to the Terrace (T–178). The conversation Collier now refers to in her affidavit could easily have been an innocuous conversation among one of the several placed by Gerber, rather than the critical conversations set forth in overt acts 1 and 3 of Count One. Additionally, Gerber herself admitted that she once called Smith merely to say "hello", and then called two times on behalf of Riggs (T–158). The Collier affidavit fails to sustain the defendant's burden of showing that this call referred to by Collier was anything other than the innocent call placed by Gerber, rather than being one of the two charged calls Gerber placed at the request of the defendant.

b. Paragraph 4 suffers from the same defect as paragraph 3, in that it fails to identify the time of the alleged conversation in which Mishowe and Gerber allegedly told Collier not to tell Riggs about Smith coming to the Terrace. Gerber worked at the Terrace for three months (T–146). This alleged conversation could have antedated the relevant time period.

Moreover, the affidavits of Heath and Collier, to the extent they purport to allege that the defendant did not know where Smith came from, are merely cumulative of the defendant's own testimony in that regard (T–277–317). *United States v. Riley,* 544 F.2d 237, 240–241 (5th Cir. 1976), *cert. denied* 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777; *United States v. Matthews,* 424 F.Supp. 339 (D.C.Pa.1976); see also *United States v. Alper,* 449 F.2d 1223, 1234 (3rd Cir. 1971), *cert. denied* 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453, *rehearing denied* 406 U.S. 911, 92 S.Ct. 1605, 31 L.Ed.2d 822; *Morgan v. United States,* 301 F.2d 272 (9th Cir. 1962).

c. Paragraph 6 of the Collier affidavit states that Riggs looked surprised and shocked when he was introduced to Smith. This is merely a conclusion on her part, and was not even testified to by the defendant himself. (T–277–317). The fact that it is now almost six years since the introduction occurred further makes the conclusionary testimony suspect. Moreover, this allegation of surprise and shock is belied by the direct testimony that Riggs procured the presence of Smith (T–145, 146, 154, 158, 213, 215–216), had sexual relations with Smith and provided her instructions as to the operation of the motel (T–169) and personally paid her the money for her prostitution activities (T–170). Furthermore, Riggs' alleged shock may be attributable to other causes such as Smith's physical appearance.

■ d. Collier's conclusory allegation in paragraph 8 that she knows of no facts that indicate Riggs knew that Smith was coming to Florida before he first met her or that he had any part of her coming to Florida is merely an assertion of negative knowledge and would be immaterial and inadmissible. This proposition is governed by the analogous principle that one who is charged with taking bribes from certain named individuals cannot properly offer evidence that he did not take bribes from uncharged individuals. *United States v. O'Connor*, 580 F.2d 38, 43 (2nd Cir. 1978); *United States v. Benedetto*, 571 F.2d 1246, 1249–50 (2nd Cir. 1978).

e. Taking the affidavits of Heath and Collier in the best light, and assuming that they would relate to relevant and material times and telephone calls, these affidavits could at the best provide only impeachment evidence against Mishowe and Gerber. Neither affidavit specifically contradicts the first–hand testimony of Mishowe and Gerber regarding their conversations with the defendant. *United States v. Zicree*, 605 F.2d 1381, 1390 (5th Cir. 1979). They do not even purport to deal with such first–hand defendant conversations, but deal only with alleged conversations with third parties. The only potentially direct evidence deals with paragraph 6 of the Collier affidavit in

which she states that Riggs looked surprised and shocked when he first met Smith. The balance of the Collier and Heath affidavits merely claim that Gerber and/or Mishowe told the affiant something different than what Gerber and Mishowe testified that they told the defendant himself. Since Mishowe was never asked what he told third parties, but rather only asked what conversations he had with the defendant, this alleged testimony is not even evidence of contradictory testimony or a prior inconsistent statement. As such, the alleged statements do not actually contradict anything that Gerber or Mishowe testified to at trial. It merely shows what Mishowe might have said to third parties, not what he said to the defendant or what the defendant himself knew. It does not disprove that Riggs planned for Smith to come to Florida. Even assuming arguendo that it was contradictory testimony or a prior inconsistent statement, it can only be used for impeachment and cannot form the basis for a new trial based on the ground of newly discovered evidence. See *United States v. Johnson*, 596 F.2d 147, 148–149 (5th Cir. 1979); *United States v. Albert*, 595 F.2d 283, 291 (5th Cir. 1979); *United States v. Hamilton*, 559 F.2d 1370, 1372–73 (5th Cir. 1977); *United States v. Diecidue*, 448 F.Supp. 1011 (M.D.Fla.1978).

■ 7. The defendant has the burden with respect to each element of the test for granting a new trial. *United States v. Hamilton, supra*, at 1374. As previously stated, he has failed to establish his diligence and that the evidence was material and not merely cumulative or impeaching. Even assuming that these requirements had been shown, it is apparent that the information contained in the affidavits of Collier and Heath is not of such a degree as would "probably produce an acquittal". *United States v. Johnson, supra*, at 148.

8. The alleged newly discovered evidence has no impact on the convictions under Count Seven and questionable impact on Count One. The Collier and Heath affidavits address the knowledge of the defendant *prior* to the arrival of Smith, and do not

concern Riggs' knowledge at the time of Smith's departure. It remains undisputed that the defendant knew Smith was prostituting at the Terrace Motel (defendant's own testimony, T–310) and that after Smith returned to New Jersey the prostitution activities continued (defendant's testimony, T–307–308). Smith was sent home by Riggs to avoid causing problems for his prostitution business as a consequence of her signing a complaint in the Michael Patrick Riley kidnap–rape episode (T–172–173, 230). Riggs personally instructed Smith to go back to her home in New Jersey (T–173), and took her to the bus station, instructing her to keep her mouth shut or else (T–174). Hence, the Heath and Collier affidavits do not impair the evidence in support of Count Seven that the defendant used and caused to be used a bus to have Smith sent from Lake City to New Jersey with the intent of facilitating the continued operation of his prostitution business. Collier herself testified in New Orleans to overhearing Riggs discuss with Mishowe the fact that Smith was going to cause a lot of publicity and a way should be found to send her home. (See Attachment N of Government's Memorandum in Opposition to Motion for New Trial, RICO trial transcript at 3271). Count Seven was based on overt act five in Count One. Even assuming arguendo that Riggs had no knowledge of Smith's residence *prior* to her appearance in Lake City, the evidence at trial indicated that he participated in a conspiracy with Mishowe and others to arrange for her departure from Florida. He discussed and agreed with Mishowe to have Smith sent home (T–227–230). As a consequence of that conspiratorial agreement, Smith committed overt act five of Count One, which was in furtherance of the objects set forth in paragraph number one of Count One, that is, to use a facility in interstate commerce with intent to facilitate the management of his unlawful prostitution business.

9. To the extent the defendant overcomes any of the deficiencies pointed out in paragraphs 8(a)–8(e), the strength of the resulting evidence is extremely weak and could not possibly rise to the required standard of *"probably"* producing an acquittal. The affidavits of Collier and Heath do not refute the substantial direct evidence at trial which established that Riggs had specifically requested Gerber to have Smith come down from New Jersey to prostitute.

Rule 33 motions "are not favored and are granted with great caution." *United States v. Hamilton, supra,* page 1373. The Court is of the opinion, for the reasons stated herein, that defendant's Motion for New Trial, coming fifteen months subsequent to the January 5, 1979, judgment of conviction and on the very eve of the date on which the defendant was scheduled to commence serving his sentence, should be and is denied.

ORDERED.