**Frank S. GILL, Petitioner,**

v.

**Jack R. DUCKWORTH; and Indiana
Attorney General, Respondents.**

No. S 86–630.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 18, 1987.

Frank S. Gill, pro se.

William P. Glynn III, Deputy Atty. Gen.,
Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Frank S. Gill (hereafter petitioner) has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Indiana State Prison in Michigan City, Indiana. He is serving one 30–year sentence for rape while using a deadly weapon and a concurrent 10–year sentence for criminal confinement entered in the Allen Superior Court November 15, 1983. This matter is now before the court on respondents' Return and Motion to Dismiss filed on December 9, 1986, and petitioner's Traverse filed on December 17, 1986, pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The state court record has been filed with this court and carefully examined under the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Petitioner's only allegation is that the state trial court erred in admitting evidence that petitioner had used a shotgun in an armed robbery. Petitioner claims in his habeas that such admission violated his due process and equal protection rights under the Fourteenth Amendment of the Constitution of the United States. Although petitioner did not assert on direct appeal to the Supreme Court of Indiana that his Fourteenth Amendment rights were violated, he did claim that the trial court committed prejudicial error in admitting evidence of his prior robbery conviction. The Supreme Court of Indiana held that the introduction of the evidence at the trial had no permissibly relevant purpose in the case and should have been excluded, but that admission of such evidence is harmless error when the conviction of such evidence is supported by overwhelming evidence of guilt. *Gill v. State*, 467 N.E.2d 724 (Ind.1984). *See also Phelan v. State*, 273 Ind. 542, 406 N.E.2d 237 (1980).

■ Respondents contend that since petitioner failed to raise his claim under the guise of the Fourteenth Amendment on direct appeal to the Supreme Court of Indiana, he has either failed to exhaust his state remedies or has procedurally defaulted. It is this court's conclusion that petitioner has neither failed to exhaust his state remedies nor procedurally defaulted. The respondents have failed to grasp the obvious issue at hand. Petitioner is asserting the same substantive issue in his federal habeas as he did on direct appeal to the Supreme Court of Indiana. In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court of the United States held that where a petitioner's constitutional rights are violated, the federal courts would be the "guardians of those rights." The court further stated:

> Whether a conviction for crime should stand when a State has failed to accord federal constitutionally guaranteed rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied. With faithfulness to the constitutional union of the States, we cannot leave to the States the formulation of the authoritative laws, rules, and remedies designed to protect people from infractions by the States of federally guaranteed rights.

*Id.* at 21, 87 S.Ct. at 826. Thus, petitioner has exhausted his state remedies in regard to his habeas issues, and this court will proceed to the merits of the claim.

■ In *Chapman v. California, supra,* the Supreme Court of the United States held that before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. The test is whether absent the constitutional infirmity, honest, fair-minded jurors might very well have returned a not-guilty verdict. *Id.* at 25–26, 87 S.Ct. at 828–829. *See also Burns v. Clusen*, 798 F.2d 931 (7th Cir.1986). The *Chapman* harmless error standard is inapplicable where violations of state evidentiary rules result in a federal constitutional violation and the resultant trial is fundamentally unfair. *United States ex rel. Searcy v. Greer*, 768 F.2d 906 (7th Cir.1985).

During petitioner's trial, the following colloquy occurred when the petitioner testified in his own behalf:

Q   Have you ever been convicted of a felony?

A   Yes, sir.

Q   What was it?

A   In 1973, I was convicted of second degree burglary.

Q   What did you burgal (sic)?

MR. COWEN: Objection, Your Honor, I don't believe that's relevant.

COURT: I'm not sure that that is relevant, I tend to agree with him.

MR. CHAMBERS: All right, I will move on.

A   And in 1976 I was convicted of armed robbery.

Q   And what was it you robbed?

MR. COWEN: Objection, Your Honor, I don't believe it's relevant.

Q   All right, what was it you were armed with?

MR. COWEN: I don't believe that's relevant either, Your Honor.

COURT: I will permit that to be answered. Overrule.

A   They say a shotgun, but no evidence was ever produced.

Q   Were you found guilty?

A   Yes.

Q   And were you sentenced?

A   Yes.

Q   And what was it—they say you had a shotgun?

A   Yes, sir.

Tr. Transcript, p. 212–213. Petitioner contends that admission of evidence as to the weapon used in the prior armed robbery was prejudicial error and resulted in his conviction. This court agrees with defendant that admission of this evidence was improper and unconstitutional, but now must determine, pursuant to *Chapman v. California, supra,* whether such admission was harmless. Again, the harmless error test is whether absent the constitutional infirmity, honest, fair-minded jurors might have returned a not-guilty verdict.

Applying the *Chapman* harmless error standard, the court finds that there was sufficient evidence in which to convict petitioner even absent the evidence admitted in regard to his using a shotgun in a prior armed robbery. Even absent this evidence, the jury would not have returned a non-guilty verdict. A brief review of the facts in this case will support this court's conclusion.

The rape victim in this cause, who will be referred to as "victim", reported to police that while she was on her way to a friend's house, petitioner emerged from between two cars and abducted her. The victim claimed that the petitioner put a knife, with a "ruffled" edge, to her throat and walked her to a muddy area between two houses. The petitioner made her lie on her right side, pulled her pants down, and then engaged in intercourse with the victim by entering her from behind. The victim testified that petitioner pulled down her pants to her ankles, and that petitioner did not even have his pants half way down his thighs. See Tr. Transcript p.p. 141–142 and 148. The victim then claimed that the petitioner walked her home, knife in hand, and asked to be invited inside. Unbeknownst to petitioner, the victim had petitioner walk her to a friend's home. Once there, the victim told petitioner that she would go into the house first, ask her babysitter to leave, and then invite petitioner inside. Once inside her friend's dwelling, the victim informed the people there that she had been raped by the man standing outside. Two of the people present rushed out and found the petitioner two houses down the street sitting on the steps. The Fort Wayne Police were dispatched to the scene. After a search of the neighborhood, police discovered a steak knife with a serrated edge under a rock in a lot adjacent to the house the victim had entered. The victim stated that this was the knife that the petitioner had used on her.

The petitioner's version of the facts varies somewhat from that of the victim's. Petitioner claims that as he was walking down the street, the victim approached him and asked if he wanted sex for $25. Be-

lieving that $25 was too expensive for carnal pleasure at the time, petitioner offered the victim $10 and she accepted. Petitioner paid the victim and she took the petitioner across the street in between the two houses. Petitioner claimed that the victim then voluntarily took down her pants and was lying flat on her back, and not her side, while they engaged in sexual intercourse. Afterwards, petitioner walked the victim to the home of her friend, which the victim claimed was her home, and waited until she was safely inside. Petitioner then proceeded two houses down the street to visit his brother's fiancee. While petitioner was knocking on the door, he was approached by two men who came out of the house that the victim had entered. They accused petitioner of raping the victim and the petitioner denied these accusations. Petitioner did not attempt to run away and remained there until the police arrived and arrested him.

This court finds that there is sufficient evidence to support the jury's verdict of guilty even absent the evidence admitted that petitioner had used a shotgun in a prior armed robbery. Michael Schele, a Fort Wayne Police Reserve Officer, testified that the victim had described the knife used on her as a "steak type of knife with a brown handle and a serrated edge." Tr. Transcript p. 164. Police found a knife which fit this description in a vacant lot adjacent to the house the victim had entered after the attack. No rust was found on the knife which is evidence that it had not been in that location for a very long time.

The victim claims that she was lying on her side while being raped and petitioner claims that the victim was lying on her back while voluntarily engaging in sexual intercourse. Based on the photographs taken of the clothing worn by the petitioner and the victim, the photographs best support the victim's testimony that she was lying on her right side. States's Exhibit Number 7 is a photograph of the victim's coat. Mud can be seen on the right side of the coat. A police department detective, Carl Alfeld, testified that no mud was found on the left side or the back of the coat. This photograph corroborates the victim's testimony that she was lying on her side and not her back as the petitioner contends. The detective further testified that there was mud around the victim's right and left knees. State's Exhibit Number 6, which is a photograph of the victim's knees, corroborates the detective's testimony. The detective further testified that there was no mud found on the back of the victim's legs. State's Exhibit Number 4 is a photograph of the pants petitioner was wearing the night of the rape. This photograph depicts mud on both knees and the left thigh. Petitioner claims that he mudded his pants when he slipped and fell into a mudhole where there was some missing sidewalk. However, State's Exhibit Number 3 depicts the muddy scene where both petitioner and victim claim they went after their meeting in the street. The jury could, without a doubt, reasonably give more weight to victim's version of the facts based on these photographs.

In the petitioner's trial, petitioner's attorney only called three witnesses to the stand in addition to the petitioner. Each of these witnesses only testified as to the victim's reputation for truth and veracity. Each one testified that the victim's reputation for truth and veracity was very bad. However, if the jury did not give great weight to their testimony, it would come as no great surprise to this court. The first witness, Carolyn Hobbs, was the mother of the petitioner's brother's son. Even though Hobbs no longer dated petitioner's brother, Hobbs testified that she and the petitioner had known each other for seven years and were friends. The second witness, Richard Roberts, was married to the victim's niece. However, Roberts' credibility might have been destroyed for two reasons. First, Roberts and the victim's niece were in the process of getting a divorce at the time of the trial. This testimony was elicited during cross-examination of Roberts. Second, Roberts' own reputation for truth and veracity was crippled when he testified during cross-examination that he

had been convicted of manslaughter, forgery, escape and theft. The petitioner's third witness, Noreen Biddle, testified that the petitioner was an honest person in addition to her testifying that the victim had a bad reputation for truth and veracity. Biddle is the daughter of Carolyn Hobbs, the petitioner's first witness.

The petitioner also testified at his trial. Petitioner claims that the testimony elicited about his use of a shotgun in a prior armed robbery conviction was just the amount of evidence needed to convict him in his rape trial. However, when the petitioner decided to testify at his trial, he put his credibility on the line. For example, the following testimony elicited on cross-examination might have caused the jury to doubt the petitioner's credibility:

Q Do you know that prostitution is illegal?

A Yes, sir.

Q Do you know that patronizing a prostitute is illegal?

A Well, I didn't think there was no wrong in it if I didn't get caught.

Q But yet you did it apparently in somebody's front yard on Williams Street?

A That's where I was assured it was all right.

Tr. Transcript p. 214. This court is not in a position to judge the credibility of the witnesses or the petitioner. The credibility judgment must be made by the trier of fact rather than this court.

Before this court makes a conclusive finding in favor of the respondents, it must first consider this case in light of *United States ex rel. Miller v. Greer,* 789 F.2d 438 (7th Cir.1986), *cert. granted,* —— U.S. ——, 107 S.Ct. 568, 93 L.Ed.2d 573 (1986), and *United States v. Harding,* 525 F.2d 84 (7th Cir.1975). The process of impeaching a defendant in a criminal case with a prior conviction is a most delicate one that a prosecutor must approach with great care. In *Greer,* the Seventh Circuit reversed the United States District Court for the Central District of Illinois in holding that the petitioner's constitutional rights were violated when the prosecutor improperly commented on his post-arrest silence during his state court trial for murder, kidnapping, and robbery. The prosecutor started his cross-examination of the defendant by asking:

Q: Mr. Miller, how old are you?

A: Twenty-three.

Q: Why didn't you tell this story to anybody when you got arrested?

*Greer* at 440. Petitioner's counsel objected immediately and asked for a mistrial out of the presence of the jury. The judge denied the motion and instructed the jury to "ignore that last question for the time being." The judge did not further instruct the jury on the prosecutor's reference to the petitioner's post-arrest silence. *Greer* at 440–441. In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court of the United States held that "the use for impeachment purposes of a petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violates the Due Process Clause of the Fourteenth Amendment." *Doyle* at 619, 96 S.Ct. at 2245. Thus, the Seventh Circuit, applying the *Chapman* standard to the *Doyle* violations, found that more than harmless error existed. The court summarized:

Because the crucial issue at trial was credibility, the *Doyle* violation went to the heart of the truth-seeking process. The evidence against Miller was not overwhelming, his story was not implausible, and the trial court's cautionary instruction was insufficient to cure the error. In these circumstances, we must conclude that it is not clear beyond a reasonable doubt that, absent the prosecutor's improper comment, the jury would have found Miller guilty of the crimes for which he was convicted.

*Greer* at 447.

Here the constitutional implication is not as violative as it was in *Greer.* There, the court held:

Because of the important fourteenth amemdment (sic) guarantees protected by *Doyle,* we hesitate to hold that anything

other than a clear, immediate, and unambiguous cautionary instruction can be sufficient to cure a *Doyle* violation. *Greer*, 789 F.2d at 447. The constitutional issue here does not go to the "heart of the truth-seeking process" as it did in *Greer*. *Id.* The prosecutor only went so far as to inquire about the type of weapon petitioner used in his prior armed robbery. Since testimony had already been legitimately introduced as to petitioner's prior armed robbery, the jury could infer that some type of weapon had been used during the robbery. Thus, the constitutional issue here does not go to the "heart of the truth-seeking process" as it did in *Greer*. *Id.*

In *United States v. Harding, supra,* then Judge, now Justice Stevens, held that although it was not improper to allow impeachment of defendant as a witness by showing his recent conviction for possession of 80 pounds of marijuana, it was error to allow the prosecutor, even in the absence of objection, to ask questions emphasizing similarity between the marijuana conviction and the current charge of selling one gram of cocaine. The following colloquy occurred between the prosecutor and the defendant Harding:

Q. Have you ever used marijuana or smoked marijuana?

A. No, sir, I have not.

Q. Have you ever been convicted of a felony?

A. Yes, I have.

Q. When was that?

A. (No response.)

Q. How about August in 1974?

A. Yes, I believe that is right.

Q. What was the felony you were convicted of?

A. Marijuana possession.

Q. Do you remember exactly what the felony was that you were convicted for, was it just possession?

A. Yes, sir, possession. It was simple possession, that is all.

Q. Wasn't it possession with intent to distribute?

A. No, sir, it was not.

Q. What sentence did you receive"

A. Two to ten.

Q. I am sorry?

A. Two to ten years.

Q. For possession of marijuana?

A. Yes, sir.

Q. You couldn't be mistaken about the crime that you were found guilty of, could you?

A. The crime they charged me with was 80 pounds of simple possession.

Q. Where did they find the 80 pounds at?

A. At my residence. sir.

Q. But, as you say, you never used drugs or never smoked marijuana?

A. No, sir, I have not.

Q. Are you living with your wife and child at this time?

A. Yes, sir.

Q. At the address you gave me in Hartford City?

A. Yes, sir.

Q. That felony that you were convicted for in August, when did they find that 80 pounds of marijuana in your house?

A. I don't recall. I think it might have been late June.

Q. June of what year?

A. '74.

Q. Five months after this incident involving the cocaine?

A. Yes, sir.

Q. Have you ever seen cocaine before?

A. Not that I know of.

Q. Do you think that Val Lamont ever saw cocaine before?

A. I don't know. I never saw any with him so I couldn't say if he did or not.

Q. How many times was Mr. Baker at your house on the 26th.

A. One time.

Q. You don't remember him coming back the second time?

A. No, sir, I don't.

Q. Now this car which you remember on the 26th, had you ever seen that car out there on the 25th.

A. No, sir, I had not.

Q. Mr. Harding this 80 pounds of marijuana that was found in your house in June of '74, was that there in January of '74 when this cocaine sale took place?

A. No, sir, it was not. Tr. 93–95.

*Harding* at 87–88 f 9.

In Part III of his opinion, Judge Stevens discussed the use of a prior conviction to impeach a witness:

The prosecutor may use a prior conviction to impeach a witness. Whether the witness be the defendant or a third party, the scope of the examination is strictly limited in order to avoid the confusion which may attend the trial of collateral issues, and also to avoid unfairness to the witness. The rule that it is error to inquire about the details of prior criminal conduct is so well established that such error is cognizable despite the absence of any objection by defense counsel. *United States v. Dow*, 457 F.2d 246, 250 (7th Cir.1972); *United States v. Mitchell*, 427 F.2d 644, 647 (3rd Cir.1970); *United States v. Pennix*, 313 F.2d 524, 531 (4th Cir.1963).

When the prior conviction is used to impeach a defendant who elects to take the stand to testify in his own behalf, two inferences, one permissible and the other impermissible, inevitably arise. The fact that the defendant has sinned in the past implies that he is more likely to give false testimony than other witnesses; it also implies that he is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life. The law approves of the former inference but not the latter. The strength of the former inference is a function of the character of the prior offense and its closeness in point of time. The strength of the second inference is largely a function of the degree of similarity between the earlier crime and the present charge. Thus, a prior conviction for possession of marijuana may or may not provide a reasonable basis for discrediting the veracity of a witness, but it would almost certainly provide a persuasive (even though impermissible) reason for believing that there is validity to a second charge of possession.

In this case, the fact that the prior offense resulted in a prison sentence of at least two years, and the fact that 80 pounds of marijuana were involved, characterized the offense as sufficiently serious to justify the permissible inference. And since both of these facts could be ascertained from the written record of the conviction, they could be placed in evidence without opening the door to collateral inquires. Moreover, there is no reason why such facts may not be brought out during the cross-examination of the witness instead of by the use of the record of conviction itself. It was therefore not error for the prosecutor to elicit testimony from appellant about his sentence and about the quantity of marijuana described in the charge on which he was convicted.

On the other hand, in view of the similarity between the prior offense and present charge, the risk of unfair prejudice was especially strong. Both the prosecutor and the court had a duty to minimize the risk that the jury would infer quilt on the cocaine charge from the fact of a recent conviction on a marijuana charge. Instead of avoiding that risk, we think the transcript, fairly read, indicates that the prosecutor affirmatively invited the jury to draw the impermissible inference. (footnotes omitted)

*Harding* at 88–90. At page 91 of the *Harding* decision, the court rejected the government's harmless error argument:

The government contends that even if error may have been committed, it was harmless. In *United States v. Mitchell*, 427 F.2d 644 ([3rd Cir.] 1970), the Third Circuit did conclude that a comparable error was harmless. That conclusion was supported by two factors not present here. First, the court emphasized the fact that the trial judge had specifically directed the jury to use the evidence of prior conviction for impeachment only, and for that purpose to disregard the details of the crime. No comparable instruction was given here. Sec-

ond, the court considered the possible prejudice in the context of the entire record and noted that the prosecutor's case was "extremely strong," because it rested on the testimony of several eye-witnesses and an admission by the defendant. Here the prosecutor's case depended entirely on uncorroborated testimony of an infomer. Moreover, in view of the fact that the entire trial was extremely brief, the relative importance of the impeaching cross-examination was certainly significant.

In considering whether the error was harmless or prejudicial, we take account of the government's closing argument. The prosecutor did not merely state that the prior conviction cast doubt on the veracity of Harding as a witness; on the contrary, he referred to the fact that the "marijuana was found in his home in June of 1974, five months after this transaction took place." Such emphasis on the similarity between the two offenses was plainly improper and must be regarded as prejudicial, particularly when the prosecutor had also improperly insinuated that Harding's truthful description of the marijuana offense was false.

Applying the test set forth at length in *Kotteakos v. United States*, 328 U.S. 750, 761–766, 66 S.Ct. 1239, [1246–1248] 90 L.Ed. 1557 [(1946)], when all is said and done, we cannot state with assurance that the error did not influence the jury, or had but very slight effect on its deliberations. Accordingly, since it is not our function to determine guilt or innocence, or to speculate upon the probability of reconviction, see *United States v. Pennix*, 313 F.2d 524, 531 (4th Cir. 1963), we must set aside the conviction and order a new trial. (footnotes omitted)

The cross-examination of Harding as to his marijuana conviction was much more extensive than the cross-examination of the petition here as to his armed robbery conviction. The prosecutor in *Harding* directly related Harding's marijuana conviction to his selling of cocaine charges. For example, the prosecutor in more than one

instance asked Harding about the marijuana charge in reference to the timing of the sale of cocaine. The prosecutor here did not make a direct reference between petitioner's armed robbery conviction and his rape charges. The Seventh Circuit in *Harding* stated that it did not approve of the inference that admission of the prior conviction means that a defendant is more likely to have committed the offense charged. *Harding* at 89. However, admission of a prior conviction may be used for discrediting the veracity of a witness. *Id.* The prosecutor used evidence of petitioner's prior conviction for this purpose during his final argument when he discussed the testimony of Noreen Biddle:

> The only thing I can tell you about her daughter [Noreen Biddle] is that she said Frank Gill is an honest guy, Frank Gill with an armed robbery and another crime, but he's an honest guy, but Tina Winget isn't.

Tr. Transcript p. 248–249. This is only the second time in the trial that the prosecutor mentioned the petitioner's armed robbery conviction.

Although the court finds that the testimony as to the weapon used in the armed robbery should have been excluded, admission of this evidence was harmless. First, once evidence was legitimately admitted that the petitioner had been convicted of *armed* robbery, it would be natural for the jury to assume that some type of weapon was used by the petitioner. Second, the prosecutor did not attempt to make a connection between petitioner's conviction for armed robbery and his rape charges. Third, the court instructed the jury as to prior felony convictions. Although the state court record does not include the final instructions, the trial judge stated that he would instruct the jury as to the weight to be given to prior criminal convictions at the conclusion of final arguments:

> MR. COWEN: Your Honor, may we approach the bench?
>
> COURT: You may.
>
> (Whereupon counsel for both parties approached the bench for a discussion outside the hearing of the jury as follows:)

MR. COWEN: I don't know whether at this point, and I'm not sure at what point I should have presented these to you, but I have a few insertions. (Referring to final instructions.)

COURT: Does this have any bearing on it?

MR. COWEN: Well, he brought out on cross examination that my client was guilty of a couple other crimes.

COURT: Oh, I guess that's right. I've got this next one covered.

Tr. Transcript 268–269. It is safe to conclude here that the probative value of petitioner's armed robbery conviction, even including evidence of petitioner using a shotgun, outweighs its prejudicial effect. *See United States v. Fountain*, 642 F.2d 1083 (7th Cir.1981).

This court now finds, pursuant to the standard set forth in *Chapman v. California, supra*, and its progeny, that the error committed in petitioner's cause was harmless beyond a reasonable doubt. *See Rose v. Clark*, — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); and *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

Accordingly, petitioner's petition for a writ of habeas corpus is hereby DENIED. SO ORDERED.