991 F.2d 799
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Carrie DOUGLAS, Petitioner/Appellant,
v.
Richard CLARK, Respondent/Appellee.
 No. 92-2166.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 12, 1993.*
Decided April 21, 1993.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. 91-C-559, Allen Sharp Judge.
 N.D.Ind.
 AFFIRMED.
 POSNER and KANNE, Circuit Judges, and PELL, JR., Senior Circuit Judges.
 
 ORDER
 
 1
 We affirm the district court's denial of Douglas's petition for a writ of habeas corpus. 28 U.S.C. § 2254.
 
 I. BACKGROUND
 
 2
 Douglas was charged with rape and confinement after a sixteen-year-old girl accused him of attacking her at knife point. Douglas denied the charges in an oral statement to police, claiming that she had consented to sexual intercourse. On January 29, 1988, two months after the charges issued, the State filed an habitual offender sentencing request. On March 8, 1988, it provided Douglas with documentation of his prior offenses, and on March 15, it introduced those documents into evidence at Douglas's trial.
 
 
 3
 After a jury found Douglas guilty as charged and determined that he was an habitual offender, Douglas filed a motion for a new trial based on newly-discovered evidence. Upon the denial of his motion, Douglas exhausted his state appellate remedies then filed a pro se petition for a writ of habeas corpus. 28 U.S.C. § 2254. The petition discussed: (1) the sufficiency of the evidence, (2) notice of the habitual offender enhancement, (3) newly discovered evidence, (4) the lack of discovery, (5) ineffective assistance of counsel, and (6) the confrontation clause. The district court rejected all these claims.
 
 II. ANALYSIS
 
 4
 In his pro se appellate brief, Douglas discusses dozens of issues, many of which we need not reach here. Although we must construe pro se briefs liberally, Haines v. Kerner, 404 U.S. 519 (1972), we may address only the claims raised in his petition for a writ of habeas corpus. Steele v. Perez, 827 F.2d 190, 193 (7th Cir.1987).
 
 A. Sufficiency of the Evidence
 
 5
 A defendant bears a "heavy burden" when he challenges his conviction based on the sufficiency of the evidence at trial. United States v. Aguilar, 948 F.2d 392, 395 (7th Cir.1991). This court will uphold the jury's verdict unless the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. United States v. Beverly, 913 F.2d 337, 360 (7th Cir.1990), cert. denied, 112 S.Ct. 786 (1991); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 1. Rape and Confinement Convictions
 
 6
 Douglas's rape conviction fell under Ind.Code § 35-42-4-1(a), which prohibits (1) knowingly having sexual intercourse with a member of the opposite sex (2) if the other person is compelled to participate by the threat of deadly force. His confinement conviction fell under Ind.Code § 35-42-3-3, a section prohibiting knowingly or intentionally confining a person without consent.
 
 
 7
 The victim's testimony, by itself, supported these two convictions[1]. United States ex rel. Bonner v. De Robertis, 798 F.2d 1062, 1066 (7th Cir.1986) (rape victim's uncorroborated testimony enough to support conviction); Gill v. Duckworth, 653 F.Supp. 877, 881 (N.D.Ind.1987) (victim's testimony sufficient to support consent determination). The victim testified that Douglas locked her in his car after she refused his sexual advances. Douglas then forced the victim to have sexual intercourse at knife point.
 
 2. Habitual Offender Adjudication
 
 8
 Although habitual offender status is defined by state law, we have noted that "a sufficiency of the evidence challenge to a state court finding that a person is a recidivist is cognizable in a federal habeas proceeding." Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir.1984), cert. denied, 469 U.S. 1229 (1985).
 
 
 9
 To sustain an adjudication under Indiana's habitual offender statute, the State must prove beyond a reasonable doubt that the accused has been convicted and sentenced for two prior offenses. Ind.Code § 35-50-2-8. These offenses must be separate from each other and from the offense of conviction; the offender must have been sentenced for the first offense before he commits the second, and sentenced for the second offense before he commits the offense of conviction. Smith v. State, 543 N.E.2d 634, 636 (Ind.1989).
 
 
 10
 The State met its burden of establishing the prior convictions by introducing certified court documents. It produced an indictment and a commitment order showing that Douglas was imprisoned on November 7, 1968 for a rape that occurred on March 14, 1968. On May 4, 1977, Douglas committed incest and a second rape. He was imprisoned for those offenses on February 6, 1981, six and one-half years before he committed the offense of conviction.
 
 B. Notice of the Habitual Offender Charge
 
 11
 Douglas also claims that the State's failure to arraign him on the habitual offender enhancement deprived him of the right to notice of charges. Instead of citing a federal constitutional ground for his claim, Douglas cites Indiana cases. These cases are inapposite because, as a federal court acting within our habeas corpus jurisdiction, we may consider only errors involving the Constitution or federal laws. 28 U.S.C. § 2254; Steele, 827 F.2d 190, 193 (7th Cir.1987).
 
 
 12
 The Due Process Clause, which provides the sole guarantee to notice of state criminal proceedings, requires only that defendants receive adequate time to prepare a defense to an habitual offender enhancement. Denton v. Duckworth, 873 F.2d 144, 149 (7th Cir.), cert. denied, 493 U.S. 941 (1989). The Due Process clause, thus, does not protect Douglas, who had two-and-one half months to prepare his case.
 
 C. Discovery
 
 13
 Douglas next argues that the trial court prevented him from conducting discovery. Our review over this issue is limited because the Constitution provides no general right to discovery in criminal cases. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). We recognize exceptions to this rule only where: (1) the court treats discovery requests by the prosecution more favorably than requests by the defense, Thompkins v. Cohen, 965 F.2d 330, 333 (7th Cir.1992), and (2) where a prosecutor withholds material, exculpatory information. Brady v. Maryland, 373 U.S. 83, 87 (1963).
 
 
 14
 Douglas never alleges that the trial court treated him inequitably, and he makes only a weak attempt to establish a Brady violation. Although Douglas cites Brady in his brief, he never clearly describes the evidence the prosecution withheld. He mentions only two medical reports that were definitely in the defense's hands at trial (Douglas alleges in another part of his brief that his attorney acted ineffectively by failing to show the same reports to the jury). Without specific descriptions of the additional materials withheld, we cannot determine whether those materials were material and exculpatory, as defined by Brady.
 
 D. Ineffective Assistance of Counsel
 
 15
 Under Strickland v. Washington, an ineffective assistance of counsel claim only amounts to a constitutional violation if (1) counsel's performance was deficient and (2) his actions caused serious prejudice. Strickland, 466 U.S. 668 (1984). Prejudice exists only if counsel's unprofessional errors render "the result of the [proceeding] unreliable or fundamentally unfair.... Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Because Douglas has failed to meet this rigorous prejudice standard, we must reject his ineffective assistance of counsel claims. See Strickland, 466 U.S. at 697.
 
 1. The Failure to Present a Defense
 
 16
 We do not believe that counsel's refusal to call witnesses caused Douglas prejudice, as defined by Fretwell. See also United States v. Ramsey, 785 F.2d 184, 194 (7th Cir.), cert. denied, 476 U.S. 1186 (1986) (It is not per se ineffective assistance to put on no defense at trial). Counsel brought out Douglas's case in his opening statement, closing statement, and cross-examinations. Id. During the cross-examinations, counsel questioned the victim about possible motives for lying, and he allowed the State to enter Douglas's police statement into evidence.
 
 2. The Failure to Perform Duties as Counsel
 
 17
 Douglas also makes several blanket assertions about his attorney's failure to investigate, call witnesses, make objections, conduct discovery and file pretrial motions. To establish such claims, Douglas must provide precise proof of how counsel's failure to perform his duties caused prejudice. U.S. ex rel. McCall v. O'Grady, 908 F.2d 170, 173 (7th Cir.1990). Where, for example, a petitioner alleges that counsel failed to investigate, the petitioner must make a "comprehensive showing as to what information the investigation would have produced"; where a claim is based on the failure to call witnesses, the petitioner must "explain their absence and ... demonstrate, with some precision, the content of the testimony they would have given at trial." United States ex rel. Cross v. De Robertis, 811 F.2d 1008, 1015 (7th Cir.1987).
 
 
 18
 Under this standard, most of Douglas's allegations fail. Douglas addresses prejudice very generally, only infrequently identifying specific witnesses, objections, and motions, or precisly describing the benefits that these efforts would have provided. Only the more particularized evidence and objections may be addressed on their merits.
 
 
 19
 Douglas's most specific evidence challenges his attorney's theory of the case. At trial, the attorney admitted that Douglas had sexual intercourse with the victim, but he argued that it was consensual; Douglas now claims he never had sexual contact with the victim. He alleges that the victim had sex with several other men the night of the alleged offense, hoping to create the physical evidence of the rape. She then accused Douglas of rape to punish him for ending a relationship with her mother. Douglas planned to support this theory by calling several witnesses with information about the breakup and by introducing testimony from Thomas Austin, a fellow inmate who purportedly had sex with the victim on the night of the alleged rape. We doubt that the attorney's failure to discover and present this testimony caused any prejudice because Douglas's new theory directly conflicts with his statement to the police.
 
 
 20
 Douglas also alleges that witnesses would have testified that the victim "was not the innocent girl the prosecution made the jury believe she was." Douglas apparently does not understand that his attorney could not introduce such testimony because the judge had suppressed it under Indiana's rape shield law[2]. Ind.Code § 35-37-4-4.
 
 
 21
 Douglas next argues that his attorney refused to introduce two medical reports. One of these reports noted (1) that semen found inside the victim's body was consistent with Douglas's blood type but (2) that Douglas could not have been the sole sperm donor. The second report contained the victim's statement that she had not "had intercourse since the attack."
 
 
 22
 We see no prejudice stemming from the failure to introduce these reports. The first report may have marginally supported Thomas Austin's story that the victim had sex with he and his friends, but Austin's story, as noted earlier, conflicts with Douglas's own statement. The second report was of no probative value whatsoever. Douglas suggests only that inconsistencies between the second and the first report could have impeached the victim. We find no inconsistencies.
 
 
 23
 Douglas also identifies two objections that his attorney could have made at trial. He claims, first, that his attorney never challenged his all-white jury. We cannot possibly assess this claim based only on the evidence presented in Douglas's brief. "A defendant has no right to a petit jury composed in whole or in part of members of his own race." Batson v. Kentucky, 479 U.S. 79, 85 (1986). The Constitution forbids only the systematic exclusion of identifiable groups from juries. Apodaca v. Oregon, 406 U.S. 404, 413 (1972). Because Douglas never claims that his attorney shut his eyes to discriminatory jury selection, we cannot find the attorney's conduct ineffective. Douglas further alleges that his attorney never objected to perjury at the trial. Douglas, however, has never produced any evidence establishing either the existance or his attorney's knowlege of the perjury.
 
 3. The Failure to Cooperate
 
 24
 Finally, Douglas alleges that his attorney ignored his instructions. Although we admit that counsel did not always adhere to Douglas's wishes, we do not believe that this caused Douglas any prejudice. Throughout the trial, Douglas urged his attorneys to make irrelevant, legally baseless and improper arguments. He even attempted to introduce forged statements from witnesses. While counsel's performance was not exemplary, he adequately represented a difficult client in a difficult case.
 
 E. Newly Discovered Evidence
 
 25
 Douglas next claims that the trial court should have granted his motion for a new trial, which was premised on newly-discovered evidence. In support of his claim, Douglas cites Indiana cases, see O'Connor v. State, 529 N.E.2d 331 (Ind.1988), forgetting that this court does not act as a tribunal of Indiana law. We need only consider violations of federal law. Shillcutt v. Gagnon, 827 F.2d 1155, 1158 (7th Cir.1987).
 
 
 26
 This term, the United States Supreme Court addressed when, if ever, a claim of actual innocence based on new evidence raises a constitutional issue. Herrera v. Collins, 113 S.Ct. 853 (1993). In Herrera, the Supreme Court emphasized that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying proceeding." The court explained that "federal courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact." The Court concluded that such claims were better handled by executive clemency.
 
 
 27
 Like Herrera, Douglas asks us to vacate his conviction without pointing to a constitutional provision mandating relief. Douglas claims only that his new evidence would have established his innocence. Even if we assume, arguendo, that Douglas could establish a constitutional violation by presenting truly persuasive demonstration of actual innocence (as the Supreme Court assumed arguendo in Herrera ), Douglas's claim would fail. All Douglas's new evidence either goes to collateral issues, or is irrelevant, given his defense at trial.
 
 F. Right to Confrontation
 
 28
 Finally, Douglas argues that the trial court violated his right to confrontation by introducing a written statement at a post-trial proceeding. We must reject this claim because the right to confrontation only applies "when the trier of fact determines the ultimate issue of fact." United States v. Andrus, 775 F.2d 825, 836 (7th Cir.1985). The right does not apply to post-trial motions argued before a judge.
 
 III. CONCLUSION
 
 29
 For the forgoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Douglas has submitted such a requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 In his appellate brief, Douglas discusses new evidence that he believes undermines the victim's credibility. We must disregard this new information because our review of the sufficiency of the evidence is limited to record evidence. Herrera v. Collins, 113 S.Ct. 853, 861 (1993). We also note that we may consider only narrow credibility issues in conjunction with a sufficiency of the evidence claim. See United States ex rel. Wandick v. Chrans, 869 F.2d 1084, 1089 (7th Cir.1989). We have "no license to redetermine the credibility of a witness whose demeanor was observed by the state trial court and not by us." Id. at 1089. We may only second-guess the jury if the witness's account is "so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it." Anderson v. Bessemer City, 479 U.S. 564, 575 (1985). In Douglas's case, we find the victim's testimony neither internally inconsistent nor implausible on its face
 
 
 [2]
 In cases similar to Douglas's, this Circuit has upheld the use of the rape shield statute against Due Process challenges. Moore v. Duckworth, 687 F.2d 1063 (7th Cir.1982) (no Due Process violation where court conceals the victim's pregnancy unless the jurors discover the pregnancy and believe that the defendant is the father); Stephens v. Morris, 756 F.Supp. 1137 (N.D.Ind.1991); cf. Stevens v. Miller, No. 91-1690, slip op. at 6-8 (7th Cir. September 19, 1991)